# Waterman's Estate.

*Wills—Trusts and trustees—Life estate—Remaindermen—Principal and income—Dividends—Extraordinary dividends—Corporations.*

1. Where the income of an estate is given to one class of persons, and the principal in remainder to another, the latter, in the absence of a clear requirement to the contrary, is entitled to have awarded to it so much of an extraordinary dividend on stock, as is necessary to make good any reduction in its intrinsic value, caused by payment of the dividend.

2. This rule applies although the stock has been granted or bequeathed specifically as stock.

3. In making distribution of an extraordinary dividend, the value of the corporation assets, as appearing on the books, is a matter of no moment; the criterion is their actual value before and after the declaration and payment of the dividend.

4. In the absence of clear evidence to the contrary, it will not be held that the amount of an estate in remainder depends on the conversion or nonconversion of stock in the estate.

5. Ordinary dividends on stock are payable as income to life tenants, even though, by partial exhaustion of the assets of the company, they reduce the value of the stock to some extent.

Argued January 21, 1924.  Appeal, No. 152, Jan. T., 1924, by Fidelity Trust Co., Trustee, from decree of O. C. Phila. Co., April T., 1883, No. 460, dismissing exceptions to adjudication, in estate of Isaac S. Waterman. Before MOSCHZISKER, C. J., WALLING, SIMPSON, KEPHART and SCHAFFER, JJ.  Reversed.

Exceptions to adjudication of HENDERSON, J.

The opinion of the Supreme Court states the facts.

Exceptions dismissed in opinion by LAMORELLE, P. J., GUMMEY, J., filing dissenting opinion in which GEST, J., concurred.  Fidelity Trust Company, trustee, appealed.

*Errors assigned* were (1, 2) dismissal of exceptions, quoting the record respectively.

*H. Gordon McCouch,* for appellant.—When testators speak of "income and profits" they mean only such as are made by the corporation after the trust is established. The interest of the life tenants commences after the death of the testator; they have no claim on profits which had accumulated before his death: Roberts's Est., 2 Pa. D. & C. 667; Smith's Est., 140 Pa. 344; Connolly's Est., 198 Pa. 137; Earp's App., 28 Pa. 368; Boyer's App., 224 Pa. 144; Stoke's Est., 240 Pa. 277; McKeown's Est., 263 Pa. 78.

When the stock of a corporation is by the will of a decedent given in trust, the income thereof for the use of a beneficiary for life, with remainder over, the surplus profits, which have accumulated in the lifetime of the testator, which are not divided until after his death, belong to the corpus of his estate, whilst the dividends of earnings made after his death are income, and are payable to the life tenant, no matter whether the dividend be in cash, or scrip, or stock.

*R. M. Remick,* of *Saul, Ewing, Remick & Saul,* with him *Joseph A. Lamorelle,* for appellee.—There is a gift of these dividends in specie to the life tenants: Boyer's App., 224 Pa. 144; Perot's App., 102 Pa. 235; Robinson's Trust, 218 Pa. 481.

In the present case the value of the stock after the declaration of the dividend on November 9, 1922, was greater than the value as shown by the books on September 7, 1920.

OPINION BY MR. JUSTICE SIMPSON, February 18, 1924:

When Isaac G. Waterman died, he had a vested one-sixth interest in his grandfather's estate, which consisted of 7,100 shares of the capital stock of the Kingston Coal Company. That estate is not distributable until the decease of certain persons, some of whom are still living; his interest was vested, however, and he, or his personal representatives, were entitled to receive the

dividends declared on his proportion of the stock, and the stock itself on the death of the last survivor of said persons.

By his will, he provided, inter alia, as follows:

"Sixth. I direct that the principal, that is, my share of the principal, of the fund held by E. W. Dwight and the Fidelity Trust Co., for the benefit of the heirs of my late grandfather, Isaac S. Waterman, be divided into three equal parts, that if practical the same be not converted into money or sold, but if it be not practical to divide the same without selling it, then that, so far as necessary for the purposes of such division, but only to such extent, it be sold or converted into money.

"Seventh. One of such equal parts I give, devise and bequeath unto the Fidelity Insurance, Trust and Safe Deposit Company of Philadelphia, Pennsylvania, in trust, nevertheless, to collect the issues and profits thereof, and to pay the same monthly to my wife Daisy Greene Waterman, and upon her death to divide the same share and share alike between my children, Camilla and Margaret.

"Eighth. The remaining two of such parts I give, devise and bequeath to said Fidelity Insurance, Trust and Safe Deposit Company, in trust, nevertheless, to collect the issues and profits thereof, and to divide the same monthly between my daughters Camilla and Margaret, share and share alike. This trust shall terminate upon the deaths of both of my said children, and upon the termination thereof the principal and accumulated income, if any, shall be divided among their issue them surviving, per capita and not per stirpes."

After Isaac G. Waterman's death, the coal company declared an extraordinary dividend, by virtue of which it distributed to each shareholder, in specie, a proportionate part of one million dollars of liberty bonds, which it had purchased from profits, wholly accumulated during testator's lifetime. The auditing judge, although admitting that this kind of a dividend, in so far as it reduced

the value of stock held by a trust estate (which he conceded this one did), would ordinarily be awarded to the corpus of the trust, nevertheless gave to the widow and children all of the liberty bonds received by the trustees, because, as he reasoned, the gift to the corpus being only of stock specifically, no part of the dividend could have been intended by it. In this conclusion he was later supported by two of his colleagues; the other two dissenting on the ground that the language of the will did not justify the conclusion attempted to be drawn from it, and hence the dividend should have been awarded to the trustees, to be held upon the trusts contained in the will. From the final decree entered in accordance with the opinion of the majority, the trustees prosecute this appeal.

It would not be difficult, perhaps, to distinguish the present case from the authorities cited by the court below to support its conclusion, because here there is no specific gift of stock, as stock, but only of a "share of the principal of the fund," which testator derived from the estate of his grandfather. We prefer, however, to dispose of this contention more broadly; and hence will treat the appeal exactly as we would if the will had specifically mentioned and bequeathed the stock. We should possibly add, however, before directly considering this question, that the authorities relied on by the court below, were from jurisdictions where the distribution of extraordinary dividends is governed by arbitrary rules, rather than by the admittedly more equitable one which has obtained here.

From Earp's App., 28 Pa. 368, to McKeown's Est., 263 Pa. 78, we have consistently held, and still hold, that where the income of an estate is distributable to one class of persons, and the principal in remainder to another, and an extraordinary dividend is declared on stock held by that estate, a portion of the dividend will be awarded to principal whenever this is necessary to make good any reduction in the intrinsic value of the

stock, and only the surplus, if any, divided among the life tenants. This equitable rule is based on the presumption that a testator or settlor intends exactly what he in effect says, namely, to give to the remaindermen, when the period for distribution arrives, all that which at the time of his deceased, legally or equitably appertains to the thing specified in the devise, bequest or grant; and to the life tenants only that which is income thereon. It follows that, whether the assets in the hands of the trustees are stock, or other securities, or both, the foregoing method of distribution applies to each and all of them, since the reason of the rule is equally applicable to all of them. Hence, he who asserts that a different conclusion must be reached in a particular estate, has the burden of proving it from the language of the deed or will. This burden is not, and should not be, a light one, for the general rule is equitable and just. That the extraordinary dividend in this case reduced the actual value of the stock exactly to the extent of the dividend, must be clear beyond cavil, for you cannot take $1,000,000 from certain assets, without leaving them $1,000,000 less in value than they were before.

Aside from the contention already disposed of, we have not been shown anything in testator's will, to cause a variance from the general rule above referred to; on the contrary, we find there are at least two considerations which strengthen the presumption. The first is, that the life tenants are not given dividends, although it was known that the estate consisted only of stock; but get simply the "issues and profits" of the estate. These words normally mean income which accrues after testator's death, and not that which was accumulated prior thereto, and hence was part of the corpus of his estate at the time of his decease. In the second place, two contingencies are provided for in the will: (1) the sale of the stock, if necessary, an investment of the proceeds, a payment of the income to the life tenants, and a distribution of the corpus to the remaindermen; or (2) a

retention of the stock, a payment of the income to the life tenants, and finally a transfer of the stock to the remaindermen. Of course, if the stock had been sold before the extraordinary dividend was declared and paid, a much greater price would have been realized than if it had been sold after that date, and the entire amount realized would have gone into the corpus of the trust: Earp's Estate, supra. In the absence of clear evidence to the contrary,—and here we can find none,—we must hold that testator did not intend that the accident of a sale of the stock, at a particular time, should alone determine the size of the principal of his estate.

Appellee further contends that the decree below was right, because a reappraisement of the coal company's assets, after the dividend was paid, made the book value of the stock greater than it had been before that time. We are not concerned, however, with book value, but with depletion of actual value, (Smith's Est., 140 Pa. 344; Stokes's Est. (No. 2), 240 Pa. 288); this, we have shown, was necessarily the exact amount of the dividend.

We have not overlooked the fourth paragraph of testator's will. It gives to appellant, however, only the "accumulated income due [testator] at the time of [his] death, from . . . . . . [the] trustees . . . . . . of [his] late grandfather Isaac S. Waterman." When testator's will became effective, the liberty bonds were still assets of the coal company only, and hence they were not "accumulated income" due testator by those trustees.

Nor have we forgotten that every dividend declared by a coal company, is paid out of moneys realized on the sale of coal mined, and hence, to a certain extent, diminishes the assets which make up the value of the capital stock. If this fact were to be given any weight, it would reduce appellee's proportion of ordinary dividends, and not establish her right to this extraordinary one. Happily for her, this does not result; our decisions give all such ordinary dividends to the life tenants, especially where, as here, the mines were

opened in testator's lifetime: Eley's App., 103 Pa. 300; Blodgett's Est., 254 Pa. 210.

The decree of the court below is reversed, and the record is remitted that distribution may be made in conformity with this opinion, the costs to be paid by the estate of Isaac G. Waterman, deceased.