### BURDICK v. COMMISSIONER OF INTERNAL REVENUE.
### No. 5566.

Circuit Court of Appeals, Third Circuit.

March 21, 1935.

W. A. Seifert and William Wallace Booth, both of Pittsburgh, Pa. (Smith, Shaw, McClay & Seifert, of Pittsburgh, Pa., of counsel), for petitioners.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and L. W. Post, Sp. Assts. to Atty. Gen., for respondent.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

On May 12, 1925, Joel W. Burdick, a resident of Pittsburgh, Pennsylvania, died. By his will he bequeathed in trust the most of his personal property, the income to be paid to his sister and wife for their lives with remainder over as to principal. Among the assets of the trust estate were 1,350 shares of stock of West Penn Steel Company valued for estate-tax purposes at $425 per share. This substantial valuation was based in part on the company's large surplus consisting mainly of cash and government securities. In 1927 and 1929, when the shares were still a part of the corpus of the trust, the Steel Company, in each year, declared an extraordinary cash dividend out of its surplus, stipulated to be earnings and profits accumulated since February 28, 1913. The trustees retained for the remaindermen the part of the dividends paid from earnings which had accumulated before May 12, 1925, the date of the testator's death, and distributed the part which had accumulated since that date to the life beneficiaries. The Orphans' Court approved the trustees' account showing these distributions and showing also that the amount at which the shares had been carried was reduced by the amount of the div-

idends retained, and that by the dividends retained the corpus of the trust was restored to its original level. The trustees made income tax returns disclosing the dividends but asserting the amount retained was a return of capital and therefore not taxable.

Opposed to the reduction of taxation, consequent upon this distribution, if valid, the Commissioner of Internal Revenue included the entire amount of the dividend received by the trust in each year as gross income for that year and assessed deficiency taxes accordingly. The Board of Tax Appeals said that was right and the taxpayers by their petitions for review say it was wrong.

Obviously, the correct answer to these opposing positions is whether the dividends on stock held and owned by the trustees —admittedly an accumulation of earnings since February 28, 1913—were in part capital or were wholly income. If capital—whose capital, that of the trustees? The petitioners say it was their capital, returned to them through the dividends and therefore non-taxable.

■ We can see that the shares held by the trustees were a capital asset of the trust which produced income in the form of dividends. But we have difficulty in seeing just how profits and gains of the corporation distributed by dividends constitute capital gains in the hands of the trustees. A like distribution made before the testator's death would clearly have been income to him. Though on his death there was a transfer of the shares from him to his trustees, and a consequent transfer of ownership and tax liability for income from the shares, there was no change in the shares themselves. Nor was a gain or loss recognized in the transfer. The shares, except as to ownership, stood as before. And whatever they should yield, by way of dividends of profits or distribution of assets in liquidation or by sale would be the same in the hands of whoever then might own them and would be subject to payment of taxes. Neither before nor after the testator's death did ownership of the shares give the holders ownership of the corporate assets of the Steel Company. Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. The surplus of the Steel Company was not a part of the trust until it was distributed through the dividends. Lynch v. Hornby, 247 U. S. 339, 38 S. Ct. 543, 62 L. Ed. 1149; Peabody v. Eisner, 247 U. S. 347, 38 S. Ct. 546, 62 L. Ed. 1152; Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. Nor could the testator by his will, making the shares corpus or principal of the trust make the income from them capital and thereby make a return of their profits a return of capital. Merchants' Loan & Trust Co. v. Smietanka, 255 U. S. 509, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305. They were the same thing all along. It was not within the power of the testator to transmute income into capital by change of ownership and thereby render their gains non-taxable when distributed. Difference in ownership of the shares made no difference in their corporate quality and no difference in the liability of the one owning them for payment of taxes on their earnings when declared and paid, unless, as the petitioners urge, the law of Pennsylvania works a difference. Earp's Estate, 28 Pa. 368, 374; Smith's Estate, 140 Pa. 344, 350, 21 A. 438, 23 Am. St. Rep. 237; McKeown's Estate, 263 Pa. 78, 106 A. 189; Waterman's Estate, 279 Pa. 491, 124 A. 166.

■ The courts of that state have held that an extraordinary dividend paid from extraordinary accumulations of surplus of a corporation on hand when the testator died, must on distribution after his death be held for the remainderman as corpus of the trust and may not, to his disadvantage, be distributed to the life beneficiary. In fairness to beneficiaries of different classes and particularly to carry out the intention of the testator, the rule treats extraordinary accumulations of gains in a corporation before the testator's death as capital but it treats them as capital only after they have been received by the trustees through dividends. That does not make the dividends a capital return within the meaning of the tax laws. If the dividends are a return of gains and profits they remain so for tax purposes, however the state law may regard them for property purposes. The rule has a very certain effect on the person, remainderman or life beneficiary, who shall pay the tax, but it has no effect upon the tax itself. Merchants' Loan & Trust Co. v. Smietanka, 255 U. S. 509, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305. That is the business of the federal government. Burnet v. Harmel, 287 U. S. 103, 110, 53 S. Ct. 74, 77, 199. The Pennsylvania rule settles the question of property rights in the distribution. With that the federal govern-

ment is not concerned. But the federal law controls as to what is a dividend and as to what is taxable income. With that, as we understand it, the Pennsylvania rule is not concerned. So the case reverts to the primary question whether under federal law the dividends here in question, being paid entirely from accumulations of earnings since February 28, 1913, are income and are taxable as such.

We find the dividends fall within the express provisions of sections 201 and 213 (a) of the Revenue Act of 1926, 44 Stat. 9, 10, 23, 26 USCA § 932 and § 954 (a), and the corresponding sections 22 (a) and 115 of the Revenue Act of 1928, 45 Stat. 791, 797, 822, 26 USCA § 2022 (a) and § 2115, and constitute taxable income.

This is so plainly true that, with the idea of a capital return out of the way, there is nothing to discuss.

The order of the Board of Tax Appeals is affirmed.