**BENNET et al. v. HELVERING, Commissioner of Internal Revenue.**

No. 198.

Circuit Court of Appeals, Second Circuit.

July 14, 1943.

Bernard A. Finkel, of New York City, for petitioners.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, J. Louis Monarch, and Ray A. Brown, Sp. Assts. Atty. Gen., for respondent.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

The taxpayers—husband and wife—appeal from a decision of the Tax Court refusing to allow them a deduction from their income tax for the year 1935, based upon the conceded fact that in that year fifty shares of stock of which the husband was the owner became worthless. The amount of the loss is not disputed, and the case may be simplified without prejudice to the Treasury by saying that it involves only a single question of law: May a taxpayer, who has received property, which was taxable as income when received, but on which he has innocently failed ever to pay any tax, deduct its loss in a later year when it becomes worthless? The Commissioner argued, and the Tax Court held, that the privilege of making such a deduction was a correlative of the payment of a tax upon the income when originally received; and that, since the husband had failed to pay any tax upon the shares at any time, he could not deduct the loss in the year when they became worthless.

The situation must be distinguished from that of a claim for refund either by action of indebitatus assumpsit (Bull v. United States, 295 U.S. 247, 55 S.Ct. 595, 79 L.Ed. 1421), or by claim for refund (R. H. Stearns Co. v. United States, 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647; Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265). In both of these the taxpayer asks a return of money paid by him on the assumption that the Treasury unjustly retains it; and for that reason his claim has been held to be subject to a set-off to the extent that he has escaped payment of an earlier tax which would have been in fact due, if the earlier assessment had been properly computed, even though that involves in effect a reassessment. In the case at bar the taxpayers ask no relief; it is the Commissioner who seeks to assess them, and in so doing to deny them a deduction whose propriety is undeniable on the facts: the shares were received as part of the taxpayer's income, they became worthless in 1935. Such a loss is concededly within the statute unless some reason, which it does not express, takes it out. That reason must be sufficient to overcome the bar of the statute against reassessment of an income tax more than three years after the return has been filed. § 275(a) of the Revenue Act of 1934, 26 U.S. C.A. Int.Rev.Code § 275(a). In several decisions we have held that the fact that the taxpayer has in the past omitted an item of charge from his gross income and has therefore never paid any tax upon it, does not toll the statute. Salvage v. Commissioner, 2 Cir., 76 F.2d 112, affirmed Helvering v. Salvage, 297 U.S. 106, 56 S.Ct. 375, 80 L.Ed. 511; Commissioner v. Union Pacific R. Co., 2 Cir., 86 F.2d 637; Schmidlapp v. Commissioner, 2 Cir., 96 F.2d 680, 683. Of course, if the omission has been consciously made, the return is fraudulent, and the tax may be assessed at any later time. § 276(a), Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Code § 276(a). We can see no reason why an innocent mistake should deprive the taxpayer of protection; statutes of limitation are passed precisely to put an end to the reconsideration of what has been once heard and decided; they presuppose that the original decision may have been erroneous.

Some courts have reached the opposite result by holding the taxpayer to the truth of what he declared in his first return, when the second tax is assessed: this, on principles of estoppel. Crane v. Commissioner, 1 Cir., 68 F.2d 640; Commissioner v. Farren, 10 Cir., 82 F.2d 141; Alamo National Bank v. Commissioner, 5 Cir., 95 F.2d 622; Doneghy v. Alexander, 10 Cir., 118 F.2d 521. The basic difficulty with this is that, although adopted in the name of equity, it does not do equity unless supplemented by what in the end comes to a reassessment of the first tax. It by no means follows that to cancel a deduction in a later year will restore the situation to what it would have been, if the tax had been assessed correctly in the first year and the deduction allowed in the second; on the contrary, it seldom, if ever, will do so. It is only in case one supplements the doctrine by limiting it to those cases in which the taxpayer gained by the omission in the first year as much as, or more than, what he will lose by cancelling the deduction in the second, that it will work out equitably, and then only on the assumption that it is inequitable in the circumstances to allow the defense of the statute of limitations. The courts which

have adopted this theory, have not shown any disposition to engraft such a condition upon it; and if they had, any logical force it might have had would have disappeared, for it would emerge for what it is, if it is to be an equitable doctrine at all: i. e. an excuse for reopening the earlier assessment in the face of the statute. Strictly, this point does not come up in the case at bar, not having been raised before the Tax Court, as the Commissioner concedes. Helvering v. Salvage, supra, 297 U.S. 106, 109, 56 S.Ct. 375, 80 L.Ed. 511. Nevertheless, it fits so closely upon the theory on which he relies, that it has been necessary to consider it.

That theory is, not that the taxpayer was here "estopped" as to any fact by his earlier return, but that if the earlier assessment were made upon one theory of law, the same theory must be consistently followed thereafter: to be specific, that if the taxpayer's earlier tax was assessed on the assumption that the receipt of the shares was not income—even if the taxpayer had no part in inducing that error—justice demands that that assumption shall be carried over into any future year in which the shares again figure in the taxpayer's return. Some decisions have so held; it is a kind of estoppel as to the law. In Comar Oil Co. v. Helvering, 8 Cir., 107 F.2d 709, for example, the Treasury was allowed to cancel a deduction on the ground that it had been already once allowed and could not be allowed a second time, although there was no pretence of any estoppel as to the facts, for the Commissioner had acted with full knowledge of them. In Dixie Margarine Co. v. Commissioner, 6 Cir., 115 F.2d 445, and Gooch Milling & Elevator Co. v. Commissioner, 8 Cir., 133 F.2d 131, the courts applied the same doctrine conversely. The taxpayer was allowed to assert an outlawed refund to cancel a corresponding item in a deficiency assessed against it in a later year. On the other hand, we have already three times refused to accept such a doctrine (Bigelow v. Bowers, 68 F.2d 839; Lembcke v. Commissioner, 126 F.2d 940; Schmidlapp v. Commissioner, supra, 96 F.2d 680); and so has the First Circuit, twice (Commissioner v. Saltonstall, 124 F.2d 110; Countway v. Commissioner, 127 F.2d 69). With deference it seems to us, not only to have all the vices of an estoppel as to the facts, but not

to have even the excuse which that doctrine has: i. e. that in making his return a taxpayer does represent that it contains his complete gross income; something which the Commissioner cannot know. Were an assessment a judgment, there might be some basis for an estoppel of record in both situations: the estoppel as to the law depending upon how far questions of law are regarded as subject to the doctrine of res judicata. But estoppels by judgment have nothing to do with the equity of the particular case, and indeed often operate very harshly; and none of the decisions on this subject have ever suggested that the Commissioner's assessment creates an estoppel by judgment. They have been uniformly based upon some supposed equity.

It may appear plausible that, if the Treasury is to be allowed to reopen a barred assessment in order to interpose a set-off to a claim for refund, it should be allowed to do the same thing in order to assess a tax. That privilege in cases of refund was based altogether upon the historical descent of the action of indebitatus assumpsit, and it may be thought that history should not remain an excuse for denying equity. But there lies behind that history in this instance something more real than accident. When a person seeks to recover money which he has paid, it does not offend our sense of fair play that before he is allowed to unravel what he has done, he should submit to the reopening of any past related transactions between him and the person against whom he is moving. But in assessing a tax, the Treasury is not on the defensive; it has the affirmative, it must bring the case within the statute which imposes the liability. If in order to do so, it must reopen a past transaction between the taxpayer and itself, which the law has declared definitively closed, its position is equitably much weaker than in the case of a refund. Such distinctions depend, not upon logic, but upon conventions which make up the greater part of what we consider just and unjust; they are not for that reason the less imperative, rather the contrary. In what we have said we do not rely upon § 272(g) of Title 26 U.S.C.A. Int.Rev.Code or question the jurisdiction of the Tax Court.

Order reversed; deficiency expunged.