## McCULLOUGH v. COMMISSIONER OF INTERNAL REVENUE.

## COMMISSIONER OF INTERNAL REVENUE v. McCULLOUGH.

### No. 16.

Circuit Court of Appeals, Second Circuit.

Jan. 14, 1946.

Marvin Lyons and George Craven, both of New York City, for taxpayer.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, A. F. Prescott, and Leonard Sarner, Sp. Assts. to Atty. Gen., for Commissioner of Internal Revenue.

Before L. HAND, SWAN and FRANK, Circuit Judges.

SWAN, Circuit Judge.

In 1940 the taxpayer sold certain shares of common stock of Standard Oil Company of California, which he had acquired by gift from his mother in 1929. His mother made the gift from a larger number of shares of such stock, some of which she had acquired as income beneficiary for life under her deceased husband's will, others of which she had acquired as dividends on and a split-up of the shares received by her from her husband's estate, and the remainder of which she had acquired by exercising subscription rights. The question in litigation is whether the taxpayer realized gain or loss on the shares he sold, and that depends upon what "basis" is properly to be ascribed to them. Concededly his basis is the same as his mother's. Section 113(a) (2), Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code, § 113(a) (2), declares with respect to property acquired by gift that the basis of the donee shall be that of the donor or of "the last preceding owner by whom it was not acquired by gift."

The facts were stipulated. The taxpayer's father died testate on May 29, 1915, a resident of Vermont. His will gave the residue of his estate to his wife for life, with remainder in trust for his children. Included in the residuary estate were 250.8 shares of common stock of Standard Oil Company of California of which the fair market value at the date of death was $284 per share. Thereafter, by reason of stock dividends, a four for one split-up, and the sale of a fractional share by the executors, the original 250.8 shares became 4,008 shares as shown in schedule A in the margin.[1] Pursuant to the testator's will and the Vermont law as to apportionment of stock dividends between life tenant and remainderman, the executors delivered to Mrs. McCullough, the taxpayer's mother, 66 dividend shares on April 16, 1917 and 1740 dividend shares on December 30, 1922.[2] The fair market value of the stock on the former date was $284 per share or $18,744 for the 66 shares, and on the latter date $60 per share or $104,400 for the 1740 shares. All of the dividend shares distributed to Mrs. McCullough by the executors of her husband's estate were declared and paid out of earnings of the corporation subsequent to her husband's death. In 1923 Mrs. McCullough subscribed for 283½ shares, pursuant to rights issued by the corporation, at a cost of $7,087.50. This brought her total holdings up to 2551½ shares as shown in schedule B.[3] Of these shares she gave her son 1551 on May 13, 1929, which he sold in 1940, together with 504 other shares that had cost him $9,125 and whose basis is not in dispute.

The taxpayer contends that the basis for his mother's shares is to be determined by using the fair market value of the dividend shares distributed to her as life beneficiary of the residuary estate ($18,744 plus $104,400, a total of $123,144) and the cost of the shares she subscribed for, $7,087.50. This gives a basis of $130,231.50 for her total holdings or $51.041152 per share, and a basis of $79,164.83 for the 1,551 shares she gave the taxpayer. There is no dispute as to the accuracy of the mathematical computation, and it results in a loss of $52,934.78 on the sale of the 2,055 shares, if the taxpayer's theory is correct. The Tax Court, however, held, with two judges dissenting, that the basis to Mrs. McCullough of the shares received from her husband's estate was a proportionate part of the basis to the executors of the original 250.8 shares. This produced a basis of $28,778.81 for the 1,551 shares and resulted in a loss of only $2,548.76 on the sale of the 2,055 shares. On this appeal the Commissioner supports the Tax Court's decision. At the hearing however, he had taken the position that Mrs. McCullough's basis for the shares received from the estate was zero, and he still so argues as an alternative contention. The adoption of the latter contention would result in a gain of nearly $22,000.

In support of the Tax Court's decision the Commissioner argues that the dividend shares distributed to Mrs. McCullough by the executors were property acquired by her "by bequest" within the meaning of § 113(a) (5) of the Internal Revenue Code, and therefore had the same basis in her hands as in the hands of the executors; that is, their basis is a proportionate part of the basis of the original stock, since stock dividends are merely a

---

[1]

**Schedule A**

| Date | | Shares |
|---|---|---|
| May 29, 1915 | Rec'd by executors of J. G. McC. estate | 250.8 |
| Apr. 15, 1916 | 50% stock dividend | 125.4 |
| Apr. 16, 1917 | 33⅓ stock dividend | 125.4 |
| | | 501.6 |
| Apr. 16, 1917 | Sold by executors | .6 |
| | | 501 |
| Mar. 10, 1921 | Split up, reducing par to $25 | 2004 |
| Dec. 30, 1922 | 100% stock dividend | 2004 |
| | Total held by executors and life beneficiary | 4008 |

[2] The rule of apportionment referred to is commonly called the "Pennsylvania rule." It is stated as the Vermont law in Re Heaton's Estate, 89 Vt. 550, 96

A. 21, L.R.A.1916D, 201. The Tax Court's opinion queries whether the 1916 stock dividend and all of the 1917 stock dividend should not have been distributed to the life tenant, but does not pass on the point as neither party raised it. We likewise pass the point without decision.

[3]

**Schedule B**

| Apr. 16, 1917 | Received from executors | 66 shs. | |
|---|---|---|---|
| Mar. 10, 1921 | Four for one split up | 264 | shs. |
| Dec. 30, 1922 | 100% stock dividend | 264 | " |
| Dec. 30, 1922 | Received from executors | 1740 | " |
| Apr. 23, 1923 | Exercise of subscription rts. | 283½ | " |
| | Total | 2551½ | |

proliferation of capital into additional fractions and a dilution of the fractional interests represented by the old shares. But we cannot accept the theory that Mrs. McCullough acquired her shares "by bequest". Although they were only fractional parts of the original shares, nevertheless the executors did not, and could not, deliver them to her as a legacy. The will gave her no part of the testator's stock; it gave her only the right to the income of such stock. She received the shares as the income beneficiary for life, not as a legatee of the testator's stock. See Plunkett v. Commissioner, 1 Cir., 118 F.2d 644, 649; cf. Irwin v. Gavit, 268 U.S. 161, 167, 45 S.Ct. 475, 69 L.Ed. 897.

■■ The fact that the stock dividend shares were not taxable income to the executors under the rule of Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570, does not preclude them from being taxable income to Mrs. McCullough when delivered to her in satisfaction of her right to receive income. See Johnston v. Helvering, 2 Cir., 141 F.2d 208, 210, cert. den. Johnston v. Commissioner of Internal Revenue, 323 U.S. 715, 65 S.Ct. 41; Plunkett v. Commissioner, supra. The reason she was entitled to the stock dividends was because they were issued as a quid pro quo for earnings "ploughed back" into the company. It is true they did not represent those earnings alone; they represented an aliquot interest in all the corporate assets, capital and surplus, including the earnings subsequent to testator's death which were ploughed back. It is true also that the life tenant could not have compelled the company to declare the earnings in cash dividends. But the case for taxing the life tenant was even weaker in Johnston v. Helvering, supra. Although there had been no usufruct from the land, we held that because under New York law a share in the proceeds from the sale of the land was to go to the life tenant—as a substitute for the income he would have presumably received if the land had been sold at once—the life tenant's share was income. So here Mrs. McCullough was taxable on the dividend shares as income, when received, because the Vermont law says that when the company (corresponding to the trustees in the Johnston case) impounded the earnings, the shares which it issued as a substitute belong to the life beneficiary. In short, the life tenant gets them because they have been issued in exchange for earnings—a forced exchange, it is true, but nevertheless an exchange.

■ Where income is received in the form of property other than money, the amount of the income is measured by the fair market value of the property at the time of its receipt. Since Mrs. McCullough could have been taxed upon the value of the shares as income when she got them we cannot doubt that such value constitutes her "basis" for them in case of sale. The Commissioner's alternative contention is that because the taxpayer has not shown that his mother returned the shares as income in the years when the executors distributed them to her, her basis in case of sale would be zero. This court has already ruled to the contrary in similar situations. Bennet v. Helvering, 2 Cir., 137 F.2d 537, 149 A.L.R. 1146; Salvage v. Commissioner, 2 Cir., 76 F.2d 112, 114, aff'd 297 U.S. 106, 56 S.Ct. 375, 80 L.Ed. 511.

For the foregoing reasons we hold that the mother's basis, and consequently the taxpayer's was the fair market value of the dividend shares on the dates she received them. Accordingly the decision is reversed and the cause remanded for redetermination of the tax.

FRANK, Circuit Judge (concurring).

The doctrine of Bennet v. Helvering, 2 Cir., 137 F.2d 537, 149 A.L.R. 1146, seems to me to be unquestionably sound. But I cannot say the same of Johnston v. Helvering, 2 Cir., 141 F.2d 208, and I concur only because I feel that in this Circuit we are bound by that decision as a precedent. Had I been sitting in the Johnston case, I would have dissented.

Suppose that, by a state statute, trustees of land were required to convey to the life tenant, as part of the life tenant's "income," one-tenth of the land in fees. I think the fiat of state law would not control, that the conveyance would not be taxable as income under the Sixteenth Amendment, or the federal income tax statute. Wherefore, I think the conclusion in the Johnston case was mistaken. See, e. g., United States v. Pelzer, 312 U.S. 399, 402-403, 61 S.Ct. 659, 85 L.Ed. 913; Morgan v. Commissioner, 309 U.S. 78, 80-81, 626, 60 S.Ct. 424, 84 L.Ed. 585; Lyeth v. Hoey, 305 U.S. 188, 193-194, 9 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410; Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199; Merchants Loan & Trust Co. v. Smietanka, 255 U.S. 509, 521, 41 S.Ct. 386, 65 L.Ed. 751, 15 A.L.R. 1305; Irish v. Commissioner, 3 Cir., 129 F.2d 468, 471; Welch v. Solo-

mon, 9 Cir., 99 F.2d 41, 44; Burdick v. Commissioner, 3 Cir., 76 F.2d 672, 673, 99 A.L.R. 515.