216 F.2d 764
 OMAHA PUBLIC POWER DISTRICT, a public corporation and political subdivision of the State of Nebraska, and Nebraska Power Company, a corporation, Appellants,
v.
George W. O'MALLEY, Collector of Internal Revenue for the United States Internal Revenue Commission, District of Nebraska, Appellee.
OMAHA PUBLIC POWER DISTRICT, a public corporation and political subdivision of the State of Nebraska, Western Iowa Power Company, a corporation, Iowa Power and Light Company, a corporation, and Omaha Electric Committee, Inc., a corporation, Appellants,
v.
George W. O'MALLEY, Collector of Internal Revenue for the United States Internal Revenue Commission, District of Nebraska, Appellee.
 No. 15002.
 No. 15003.
 United States Court of Appeals Eighth Circuit.
 November 24, 1954.
 Rehearing Denied December 16, 1954.
 
 Reece A. Gardner, Kansas City, Mo. (Raymond M. Crossman, Thomas C. Quinlan, Omaha, Neb., G. Lee Burns, Kansas City, Mo., Brown, Crossman, West, Barton & Quinlan, Omaha, Neb., and Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Mo., on the brief), for appellants.
 Karl Schmeidler, Sp. Asst. to Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., and Donald R. Ross, U. S. Atty., Omaha, Neb., on the brief), for appellee.
 Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.
 SANBORN, Circuit Judge.
 
 
 1
 These are actions for the recovery of federal excise taxes imposed on sales of electrical energy by § 3411 of the Internal Revenue Code, 26 U.S.C. (1946 ed.) § 3411.[1] The appellants claimed that the taxes were erroneously paid and collected, because the plants of the taxpayers[2] were publicly owned and § 3411(c) exempted "publicly owned electric and power plants" from payment of the tax.
 
 
 2
 The taxes involved in No. 15,002 were paid for the months from May 1, 1946, to December 2, 1946, by the Nebraska Power Company, a Maine corporation, and amounted to $151,552.68. (Refund of taxes paid for months prior to May 1, 1946, was barred by limitations.)
 
 
 3
 The taxes involved in No. 15,003 were paid for the period December 2, 1946, to May 14, 1949, by Western Iowa Power Company, an Iowa corporation, in the aggregate amount of $100,080.79.
 
 
 4
 Claims for refund of the taxes in suit were filed by the taxpayers and the Omaha Public Power District, a political subdivision of the State of Nebraska. The Power District on December 2, 1946, had acquired the plants and properties in Nebraska of the Nebraska Power Company, and claimed to have been, prior to that date, the beneficial owner of the plants and properties of the taxpayers. The Commissioner of Internal Revenue rejected the claims. The instant actions followed.
 
 
 5
 The issues raised were: (1) whether prior to December 2, 1946, the electric and power plants of the Nebraska Power Company were "publicly owned" within the meaning of § 3411(c), Title 26 U.S. C. (1946 ed.); and (2) whether prior to May 14, 1949, the plant of the Western Iowa Power Company was "publicly owned." These issues were submitted to the District Court upon voluminous stipulations of fact showing in detail every circumstance and transaction which was thought to have any possible relevancy. The District Court concluded that the plants and properties of the taxpayers were not "publicly owned" during the periods for which the taxes were paid, and that the taxes were not erroneously paid or collected. Judgments were entered accordingly, and these appeals followed.
 
 
 6
 The District Court, in the case which sought recovery of the taxes paid by the Nebraska Power Company for the months from May 1, 1946, to December 2, 1946 (Appeal No. 15,002), filed an opinion, D.C., 114 F.Supp. 3, in which the stipulated facts are stated in detail. Since only the conclusions of the court are under attack, there is no need for restating in detail the facts stipulated. The general factual basis for the claims that the taxpayers were exempt from the tax, and the bases for the disallowance of the claims by the Commissioner of Internal Revenue, can be gathered from the claims for refund and the letters of the Commissioner denying the claims.
 
 
 7
 We quote the following from the claim for refund of the taxes paid by the Nebraska Power Company for the months from May 1, 1946, to December 2, 1946:
 
 
 8
 "For several years prior to and on December 26, 1944, Nebraska Power Company, a corporation organized under the laws of Maine, owned and operated electric power generating plants and an electric power distribution system in the city of Omaha and adjacent territory in Nebraska, and a part of its distribution system extended into and served residents of the State of Iowa.
 
 
 9
 "Prior to December 26, 1944, citizens of the city of Omaha formed a plan to organize a public power district as a political subdivision of the State of Nebraska, and to cause it to acquire and operate the Nebraska Power Company's electrical generating plants and its distribution system lying and being within the State of Nebraska.
 
 
 10
 "To that end, on December 9, 1944, those citizens incorporated Omaha Electric Committee, Inc., under the nonprofit corporation laws of the State of Nebraska without capital stock.
 
 
 11
 "On December 26, 1944, Omaha Electric Committee, Inc., purchased all of the outstanding common stock of Nebraska Power Company for the declared purpose of holding it until a corporation could be organized as a political subdivision of the State of Nebraska for the purpose of acquiring and taking over the Nebraska Power Company's generating plants and its distribution system lying within the State of Nebraska. Upon the acquisition of all of the stock of Nebraska Power Company by Omaha Electric Committee, Inc., the old officers and board of directors of the former company resigned, and all were replaced by persons selected by Omaha Electric Committee, Inc.
 
 
 12
 "From that time until December 2, 1946, Nebraska Power Company was wholly owned, controlled and operated by Omaha Electric Committee, Inc., as a publicly owned electric and power plant.
 
 
 13
 "In furtherance of the plan mentioned above, on September 14, 1945, Omaha Electric Committee, Inc., caused Omaha Public Power District to be organized under and pursuant to sections 70-601 and 70-679 [70-609] of the Revised Statutes of Nebraska, 1943, as amended by Chapter 157, Laws of Nebraska, 1945, page 515. As so organized, Omaha Public Power District became, was, and is a political subdivision of the State of Nebraska. Section 70-602, Revised Statutes of Nebraska, 1943, as amended; Amburst v. Wardner G. Scott (District Court of Lancaster County, Nebraska).
 
 
 14
 "Omaha Public Power District was without authority to own and operate that part of the Nebraska Power Company's distribution system lying in the State of Iowa, and in order for Omaha Public Power District to carry out the purposes for which it was organized, it was essential that the Iowa distribution system be divorced and severed from the Nebraska properties. To that end, on October 19, 1946, Omaha Electric Committee, Inc., and Omaha Public Power District entered into an agreement, under the terms of which Omaha Electric Committee, Inc., agreed to organize a company under the laws of the State of Iowa, to purchase all of its outstanding stock, and then to transfer to it a portion of the common stock of Nebraska Power Company in exchange for bonds to be issued by the Iowa Company. The remaining stock of Nebraska Power Company was to be transferred to Omaha Public Power District.
 
 
 15
 "Pursuant to that agreement, on November 7, 1946, Omaha Electric Committee, Inc., organized Western Iowa Power Company as a corporation under the laws of Iowa, purchased all of its outstanding stock for $50,000, which was at par, and on December 2, 1946, transferred to it part of the common stock of Nebraska Power Company in exchange for bonds of Western Iowa Power Company. The remainder of the stock of Nebraska Power Company was transferred to Omaha Public Power District.
 
 
 16
 "On December 2, 1946, Omaha Electric Committee, Inc., and Omaha Public Power District entered into an agreement, under the terms of which it was acknowledged that all of the property held and owned by Omaha Electric Committee, Inc., belonged to Omaha Public Power District. On that date, Omaha Public Power District and Western Iowa Power Company, as shareholders of Nebraska Power Company, caused it to distribute to Western Iowa Power Company substantially all of its distribution system located in Iowa in complete cancellation and redemption of all of the stock of Nebraska Power Company then owned by Western Iowa Power Company, leaving Omaha Public Power District the owner of all issued and outstanding common stock of Nebraska Power Company.
 
 
 17
 "Thereupon, Nebraska Power Company distributed to Omaha Public Power District all of the remainder of its assets, with the exception of $25,000 and a claim for refund of Federal income taxes which had theretofore been filed, in cancellation and redemption of all but ten shares of the issued and outstanding common stock of Nebraska Power Company. Omaha Public Power District assumed and agreed to pay all of the obligations of Nebraska Power Company.
 
 
 18
 "Since that time, Omaha Public Power District has continued to own and it now owns all of the issued and outstanding shares of common stock of Nebraska Power Company. Between 1932 and December 2, 1946, Nebraska Power Company never raised any of the rates at which it sold electric energy, and it never at any time added any part of the tax imposed by section 616(a) of the Revenue Act of 1932, as amended by the Act of June 16, 1933 (Section 3411, Internal Revenue Code) to the price at which it sold electricity.
 
 
 19
 "On May 14, 1949, Omaha Electric Committee, Inc., sold all of the common stock of Western Iowa Power Company to Iowa Power and Light Company, and all of the net proceeds of the sale, if any, were turned over to Omaha Public Power District.
 
 
 20
 * * * * * *
 
 
 21
 "The refunds for which claim is hereby made will inure solely to the benefit of Omaha Public Power District. This claim is accordingly made jointly and severally by each of the claimants herein, and therefore, any moneys received hereunder, including interest, by Nebraska Power Company will be immediately paid over to Omaha Public Power District as the real party in interest. * * *"
 
 
 22
 We also quote the following excerpts from the letter of the Commissioner of Internal Revenue denying this claim for refund:
 
 
 23
 "The evidence shows that prior to December 26, 1944, the citizens of the City of Omaha formed a plan to organize a public power district as a political subdivision of the State of Nebraska and to cause it to acquire and operate the Nebraska Power Company's electrical generating plants and distribution system lying and being within the state of Nebraska. To that end on December 9, 1944, the citizens incorporated the Omaha Electric Committee, Incorporated, which on December 26, 1944 purchased all of the outstanding common stock of the Nebraska Power Company for the purpose of holding it until a corporation could be organized as a political subdivision of the State of Nebraska to acquire and take over the Nebraska Power Company's generating plants and distribution system lying within the State of Nebraska. In the furtherance of the above plan, on September 14, 1945, the Omaha Electric Committee, Incorporated, caused the Omaha Public Power District to be organized under the Revised Statutes of Nebraska as a political subdivision of the State of Nebraska. However, it was not until December 2, 1946, that the Omaha Electric Committee, Incorporated, and Omaha Public Power District entered into an agreement, under the terms of which it was acknowledged that all of the property held and owned by the Omaha Electric Committee, Incorporated, belonged to Omaha Public Power District.
 
 
 24
 "The Bureau recognizes the Omaha Public Power District as a political subdivision of the State of Nebraska and any sale of electrical energy by it to be exempt from the tax imposed by the provisions of section 3411(a) of the Internal Revenue Code. However, since the evidence on file shows that the Omaha Electric Committee was incorporated as a private corporation and that its funds were not supervised by the State or a political subdivision thereof, the Bureau holds that it is not a political subdivision of the State of Nebraska. It is further held that the sale of electrical energy by the Nebraska Power Company during the period its common stock was held by the Omaha Electric Committee, Incorporated, is not exempt from tax. Therefore, since the tax was properly due and paid during the period involved, the claim is rejected in full."
 
 
 25
 The letter of the Commissioner of Internal Revenue denying the claim for refund of the taxes paid by the Western Iowa Power Company contains the following, among other, statements:
 
 
 26
 "It has been shown that the Omaha Public Power District a political subdivision of the State of Nebraska during the period December 2, 1946, through May 14, 1949, had the entire beneficial interest in Western Iowa Power Company, but that the legal ownership of all the authorized and outstanding capital stock of the company was held during that period by the Omaha Electric Committee, a Nebraska corporation which was a distinct corporate entity, separate and apart from the political subdivision. Since the evidence on file discloses that the Omaha Electric Committee was incorporated as a private corporation and its funds were not supervised by the State or a political subdivision thereof, the Bureau holds that it is not a political subdivision of the State of Nebraska. The Bureau recognizes the Omaha Public Power District as a political subdivision of the State of Nebraska and any sale of electrical energy by it to be exempt from the tax imposed by the provisions of section 3411(a) of the Internal Revenue Code. However, it is the opinion of the Bureau that section 3411(c) of the Code does not include, as a `publicly owned' electric and power plant, a utility which does not serve the people of the state of the claimant of its ownership, such ownership being not constitutionally permissible for the claimant political subdivision because of the extra-territorial character of the utility. It is therefore held that such an extra-territorial impediment causes the utility not to qualify as a `publicly owned' electric and power plant in the sense contemplated by section 3411(c).
 
 
 27
 "In view of the above, it is held that the sale of electrical energy by the Western Iowa Power Company during the period December 2, 1946, through May 14, 1949, is not exempt from tax. Therefore, since the tax was properly due and paid during the period involved, the claim is rejected in full."
 
 
 28
 The views of the District Court did not differ substantially from those of the Commissioner of Internal Revenue, and its decision amounted virtually to an affirmance of the Commissioner's rulings.
 
 
 29
 It is clear that when, in furtherance of the plan to bring about the public ownership of the plants and properties of the Nebraska Power Company, the Omaha Electric Committee, Inc. (which prior to January 5, 1945, was named Central West Irrigation Company, but which we shall refer to throughout this opinion as "the Electric Committee"), purchased on December 26, 1944, all of the common stock of the Nebraska Power Company, it did so for the purpose of holding the stock until a public corporation or political subdivision of the State of Nebraska could be organized and was in a position to acquire the plants and physical properties of the Company in the State of Nebraska and until the Iowa properties of the Company could be disposed of.
 
 
 30
 The acquisition of the common stock of the Nebraska Power Company by the Electric Committee was a preliminary step toward the ultimate goal of having some locally controlled political subdivision of the State acquire the Nebraska properties of the Company. In addition to its common stock, the Nebraska Power Company had outstanding prior to December 2, 1946, more than 74,000 shares of $100 par value preferred stock with voting rights, $16,500,000 of First Mortgage Bonds due in 1981, and $3,500,000 of debentures due in 2022. It was not until December 1, 1946, when the Electric Committee contributed $27,700,000 of borrowed money to the capital of the Nebraska Power Company, that that Company retired its preferred stock, bonds and debentures, and was in a position to transfer its plants and physical properties in retirement of its common stock.
 
 
 31
 On December 2, 1946, the Electric Committee transferred to Western Iowa Power Company, an Iowa corporation organized on November 7, 1946 (the capital stock of which was wholly owned by the Committee), 77,000 shares of the common stock of Nebraska Power Company in exchange for $3,350,000 principal amount of bonds of the Western Iowa Power Company. This was done pursuant to an agreement between the Omaha Public Power District and the Electric Committee.
 
 
 32
 The Nebraska Power Company on December 2, 1946, transferred to Western Iowa Power Company substantially all of the Iowa properties of the Nebraska Power Company in redemption of the 77,000 shares of Nebraska Power Company common stock owned by Western Iowa Power Company. The remainder of the common stock (923,000 shares) of the Nebraska Power Company was then sold by the Electric Committee to Omaha Public Power District for $42,000,000, which enabled the Electric Committee to defray its obligations and to provide for the ultimate transfer of its remaining properties to the Omaha Public Power District, "including the proceeds of the sale of the Iowa Company securities owned by the Committee."
 
 
 33
 Also on December 2, 1946, the Nebraska Power Company transferred to the Omaha Public Power District, in redemption of all the Power Company's outstanding common stock except 13 shares, the remaining assets of the Power Company, with exceptions which are not material. The 13 shares of common stock of Nebraska Power Company which were left outstanding belonged to the Omaha Public Power District.
 
 
 34
 On October 29, 1947, the Electric Committee and Western Iowa Power Company offered to sell the properties of that Company to the City of Council Bluffs, Iowa, or other public instrumentality of the State of Iowa, for approximately $3,550,000. The offer was not accepted. On May 14, 1949, the Electric Committee sold all of the stock and bonds of Western Iowa Power Company for about $3,485,000 to Iowa Power and Light Company, a private corporation.
 
 
 35
 On July 15, 1949, the Electric Committee transferred all of its remaining assets to Omaha Public Power District. The Electric Committee, from the date of its organization to July 15, 1949, had received $88,946,018.67 and had expended an equal amount in bringing about the public ownership by the Omaha Public Power District of the Nebraska plants and properties of the Nebraska Power Company and the disposition of its properties in Iowa for the benefit of the Omaha Public Power District.
 
 
 36
 The Electric Committee was not at any time a political subdivision of the State of Nebraska. It was a private non-profit corporation organized under Nebraska law.
 
 
 37
 It is our opinion that the acquisition of the common stock of the Nebraska Power Company by the Electric Committee on December 26, 1944, in furtherance of the plan to have a political subdivision of the State of Nebraska eventually acquire ownership of the plants and physical properties of the Power Company located in that State, did not bring about the public ownership of the Nebraska plants of that Company, and that the plants were not "publicly owned" until December 2, 1946.
 
 
 38
 The question of whether the physical properties of the Nebraska Power Company owned and operated from December 2, 1946, to May 14, 1949, by Western Iowa Power Company were publicly owned, is more doubtful. The capital stock and bonds of the Western Iowa Power Company were, during that period, held by the Electric Committee for the ultimate benefit of the Omaha Public Power District. While it may be true that, under Nebraska law, it would have been beyond the powers of the Omaha Public Power District to own and operate the physical properties of the Nebraska Power Company in Iowa, nevertheless we think that if the District had accepted the ownership of such properties they would have been "publicly owned". They certainly would not have been privately owned merely because, under Nebraska law, there was some legal impediment to their retention by the Omaha Public Power District.
 
 
 39
 It is apparent, however, that it was considered unlawful for the Omaha Public Power District to own and operate the Iowa properties formerly owned by the Nebraska Power Company. The Electric Committee and the Omaha Public Power District chose to place the ownership of those properties in Western Iowa Power Company, a private corporation, and to have it retain and operate them until they were disposed of. Having made that choice, the Power District is not, we think, in a position to claim that prior to May 14, 1949, the properties of Western Iowa Power Company were "publicly owned" and that that private corporation was exempt from the electrical energy taxes which it had paid.
 
 
 40
 In Moline Properties, Inc., v. Commissioner of Internal Revenue, 319 U.S. 436, 438-439, 63 S.Ct. 1132, 1134, 87 L.Ed 1499, the Supreme Court said:
 
 
 41
 "The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. New Colonial [Ice] Co. v. Helvering, 292 U.S. 435, 442, 54 S.Ct. 788, 791, 78 L.Ed. 1348; Deputy v. Du Pont, 308 U.S. 488, 494, 60 S.Ct. 363, 366, 84 L.Ed. 416. In Burnet v. Commonwealth Improvement Co., 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399, this Court appraised the relation between a corporation and its sole stockholder and held taxable to the corporation a profit on a sale to its stockholder. This was because the taxpayer had adopted the corporate form for purposes of his own. The choice of the advantages of incorporation to do business, it was held, required the acceptance of the tax disadvantages."
 
 
 42
 The appellants place much reliance upon the decision of this Court in Keokuk & Hamilton Bridge, Inc. v. Commissioner of Internal Revenue, 8 Cir., 180 F.2d 58. In that case a private corporation had title to a toll bridge for the purpose of collecting the income, applying it to the payment of the bonded indebtedness which was a lien on the bridge, and, as soon as that indebtedness was paid, to transfer the bridge to the City of Keokuk in accordance with the terms of a gift proposal, trust indenture and conveyance. The Commissioner of Internal Revenue and the Tax Court, 12 T.C. 249, were of the opinion that the income from the bridge was taxable to the corporation which had title to it and was collecting the tolls. On review, this Court (one judge dissenting) held, in effect, that, under applicable Iowa law, the City, as the donee of a charitable gift, was the equitable owner of the bridge, and the corporation was an agency created for the sole purpose of making the gift to the City effectual. The court said, at page 64 of 180 F.2d: "The vital issue is not one of exemption but whether or not the petitioner [the corporation] received taxable income. We conclude that it did not during the years in question receive any income in which it had a beneficial interest."
 
 
 43
 In the instant case, the question is one of exemption; and this Court has said that provisions in tax laws granting exemptions are to be strictly construed. Crane-Johnson Co. v. Commissioner of Internal Revenue, 8 Cir., 105 F.2d 740, 743. See also Helvering v. Northwest Steel Rolling Mills, Inc., 311 U.S. 46, 49, 61 S.Ct. 109, 85 L.Ed. 29. Those who seek an exemption from a tax must rest it on more than a doubt or ambiguity; and "broad, generalized statutory exemptions have frequently been construed narrowly and confined to those situations where the subject matter of the exemption was directly, not indirectly or remotely, involved." United States v. Stewart, 311 U.S. 60, 71, 61 S.Ct. 102, 109, 85 L.Ed. 40.
 
 
 44
 The three to two decision of the Federal Power Commission in In the Matter of Nebraska Power Co., 5 F.P.C. 8, also relied upon by the appellants, did not involve the question with which we are concerned. The question before the Power Commission was whether the ownership of the common stock of the Nebraska Power Company by the Omaha Electric Committee, Inc., made the Power Company a corporation which was "wholly owned, directly or indirectly," by a State or any political subdivision or instrumentality thereof, within the meaning of § 201(f) of Part II of the Federal Power Act, 49 Stat. 848, 16 U.S.C.A. § 824(f).[3] The Commission determined that the Nebraska Power Company since December 26, 1944, had been directly wholly owned by the Electric Committee and indirectly wholly owned by Loup River Public Power District, a political subdivision of the State of Nebraska, and that the Electric Committee was a mere instrumentality of that Power District, which had financed the purchase by the Electric Committee of the common stock of the Nebraska Power Company. The Commission did not determine, and was not concerned with, the question whether the plants and properties of the Nebraska Power Company were "publicly owned". That the ownership of the common stock of a corporation does not carry with it the ownership of the physical properties of the corporation, should require no citation of authority, but see Eisner v. Macomber, 252 U.S. 189, 208, 40 S.Ct. 189, 64 L.Ed. 521; Rhode Island Hospital Trust Co. v. Doughton, 270 U.S. 69, 81, 46 S.Ct. 256, 70 L.Ed. 475; Klein v. Board of Tax Supervisors, 282 U.S. 19, 24, 51 S.Ct. 15, 75 L.Ed. 140; Burdick v. Commissioner of Internal Revenue, 3 Cir., 76 F.2d 672, 673, 99 A.L.R. 515. Cf. City of Burlington, Iowa v. United States, 8 Cir., 148 F.2d 887, 889.
 
 
 45
 It is our conclusion, based upon the entire record in this case, that whatever indirect, beneficial or constructive interest the Omaha Public Power District may have had in the plants and properties of Nebraska Power Company prior to December 2, 1946, and in the properties of Western Iowa Power Company from December 2, 1946, to May 14, 1949, was insufficient to exempt those private corporations from the payment of the excise taxes imposed by § 3411, Title 26 U.S.C. (1946 ed.).
 
 
 46
 The judgments appealed from are affirmed.
 
 
 
 Notes:
 
 
 [1]
 Section 3411, Title 26 U.S.C. (1946 ed.), so far as pertinent provides:
 "(a) There shall be imposed upon electrical energy sold for domestic or commercial consumption and not for resale a tax equivalent to 3 1/3 per centum of the price for which so sold, to be paid by the vendor under such rules and regulations as the Commissioner, with the approval of the Secretary, shall prescribe. * * *
 * * * * *
 "(c) * * * None of the provisions of this section shall apply to publicly owned electric and power plants, * * *."
 
 
 [2]
 Nebraska Power Company and Western Iowa Power Company
 
 
 [3]
 "(f) No provision in this Part shall apply to, or be deemed to include, the United States, a State or any political subdivision of a State, or any agency, authority, or instrumentality of any one or more of the foregoing, or any corporation which is wholly owned, directly or indirectly, by any one or more of the foregoing, or any officer, agent, or employee of any of the foregoing acting as such in the course of his official duty, unless such provision makes specific reference thereto."