JOHNSTON v. HELVERING, Commissioner
of Internal Revenue.

KLAGES v. SAME.

Nos. 60, 61.

Circuit Court of Appeals, Second Circuit.

Feb. 23, 1944.

George A. Reiss, of New York City, for petitioners.

Morton K. Rothschild, of Washington, D. C., for respondent.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The taxpayers in these cases appeal from two orders of the Tax Court, assessing deficiencies against them on their income taxes for the year 1937. The appeals are precisely alike, and the only question in each is whether payments made to the taxpayers in that year should be regarded as income within § 162(b), or § 22(a) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev. Acts, pages 893, 825, or indeed whether they can be so regarded under the Sixteenth Amendment. The facts which raise this question, and which were stipulated, are as follows. The taxpayers were life beneficiaries of, and entitled to "the net income" from, a trust, created by a deed, executed by their mother in 1921, and consisting of real property in the City of New York. In 1924 the trustees sold this property, and in part payment took back a bond in the principal sum of $600,000, secured upon the property sold. In 1932 the mortgagor defaulted in the payment of interest upon this mortgage and the trustees foreclosed, bidding in the property in December of that year for $600,000. There was then due upon the bond for principal and interest about $628,500, and the expenses of foreclosure and unpaid taxes came to some $27,000 more. On January 11, 1937, the trustees sold the property so bid in for $550,000—$100,000 in cash, and $450,000 in a purchase money mortgage. The accumulated interest due upon the principal sum of $600,000 from February 1, 1932 to the date of sale by the trustees on January 11, 1937, was about $163,000; so that that part of the purchase price of $550,000, to which the life tenants were entitled, if the purchase price were to be

divided proportionately between principal and accrued interest, was a little over 21%. The trustees divided the cash received in that proportion, each beneficiary receiving his or her share in 1937. They also credited the same proportion of the mortgage of $450,000 to each beneficiary, and three payments in reduction of the principal of the mortgage which were made in 1937, they also divided and turned over to each his or her proper proportion.

In their fiduciary return the trustees did not treat any part of these payments as income of the taxpayers, nor did the taxpayers themselves in their individual returns include them in their gross income; but the Commissioner surcharged them with both the cash which they received and the value of that proportion of the mortgage which had been credited to them. He held that these were payments made upon the accrued interest from February 1, 1932, to January 11, 1937. In their appeal to the Tax Court, the taxpayers argued, as they do before us, that since $550,000 was less than the bid upon which the trustees had bought in the property at the foreclosure in 1932 (less also than the principal of the mortgage itself), it was impossible to say that they had received income of any kind. Whatever the real property might have brought in net from December, 1932 to January 11, 1937, might indeed be income; but the payments actually made or credited to them came out of the proceeds of the sale of principal—the fee in the land in which they had only equitable life estates—and, even though the law of New York allotted a part of those proceeds to them as an equivalent of the interest which they would have received if the original mortgage had still remained in existence, that could not make income out of what was not in fact income. The statute could not have intended to include such payments; especially since, if it had, it would have gone beyond the Sixteenth Amendment. State laws can no more extend the Constitution than they can contract it: "income" is to be determined, not by what the state courts may call "income," but by what the federal law includes in that concept. Lyeth v. Hoey, 305 U.S. 188, 159 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410.

To overrule this argument the Tax Court—three judges dissenting—resorted to two decisions of the Court of Appeals (In re Chapal's Will, 269 N.Y. 464, 199 N.E. 762, 103 A.L.R. 1268, and In re Otis' Will, 276 N.Y. 101, 11 N.E.2d 556, 115 A.L.R. 875), which, since they are also the backbone of the Commissioner's argument, we will state in a little detail. The first came up upon a petition of trustees for instructions, and one of the questions involved was, how they should divide the proceeds of any real property they might sell after bidding it in upon the foreclosure of a mortgage which had been part of the res. The Surrogate had ordered that the proceeds should be divided proportionately between the life beneficiaries and the remaindermen; but the Appellate Division (245 App.Div..818, 280 N.Y.S. 811) had reversed this and directed that the whole purchase price should go into the corpus of the trust. That decision the Court of Appeals in its turn reversed (page 472 of 269 N.Y., page 764 of 199 N.E., 103 A.L.R. 1268), because the problem was "of the liquidation of real estate acquired of necessity because of default on a mortgage investment." "In such an investment situation what is involved is the salvage of a security. The security it is to be remembered is a security not for principal alone but for income as well." The same point came up again about two years later in In re Otis' Will, supra, 276 N.Y. 101, 11 N.E.2d 556, 115 A.L.R. 875, upon an appeal from a decree settling a trustee's account. The court then held that the proper rate at which to compute interest during the period while the trustee held the land bid in, was the rate reserved in the bond, not the rate current at the time (page 112 of 276 N.Y., page 557 of 11 N.E.2d, 115 A.L.R. 875). That, it will be observed, was consonant only with the theory that the bond was to be treated as though it was still in existence in spite of the foreclosure. Another part of the same decision even more plainly confirms this interpretation. The trustee had exchanged a defaulted mortgage for some bonds of the Home Owners Loan Corporation, which it later sold at a loss in both principal and interest. The question was whether the life beneficiaries should share in the amount so realized, as they did in the proceeds of real property bid in upon foreclosure. To this the court said "no" (pages 113, 114 of 276 N.Y., page 558 of 11 N.E.2d, 115 A.L.R. 875): there was a difference, it thought, between land which the trustee often has "no choice but to take over * * * and to carry * * * pending a sale," and a bond for which there may be a market. "No carry-

ing period is inherent in the process of liquidation in that case. * * * It is not a salvage operation." It is apparent from these two decisions that in New York the period during which trustees hold land bid in upon foreclosure is treated merely as a continuation of the period of default; just as a court of equity always treated the period from the time that the mortgagor suffered default in the condition of a mortgage until the equity of redemption expired. So long as the trustee is forced to suspend the completion of the "salvage operation," the foreclosure is to be disregarded as an irrelevant incident, and the land—as between life tenants and remaindermen—continues nothing more than a security for the debt. The trustee has not changed the investment from a bond to land; he has taken over the title for protection only; until he finally disposes of it, he is merely engaged in "the salvage of a security."

 It is of course true, as the taxpayers argue, that the federal fiscal system is self-determined in the sense that the meaning of its terms does not depend upon the law of the state; nevertheless, when Congress imposes taxes based upon the existence of legal rights or duties, it must be understood to refer to such rights and duties as the state law creates, since there are no others; nor could there be, unless Congress were to set up for its fiscal uses systems of municipal law parallel with those already existing in the states. From the earliest times in New York (Waters v. Stewart, 1 Caines Cas. 47; Jackson ex dem. Norton v. Willard, 4 Johns. 41), as in so many other of our states, a mortgage has been only a lien, as it always was in equity; and it is security, pari passu, both for the principal and the interest of the debt secured. Therefore, when the trustees bid in the land on December 13, 1932, it was taken in satisfaction of at least so much interest as had then accrued, as well as of the principal; and so much of the proceeds of the sale in 1937 as was allocable to interest upon the debt from February 1, 1932 to December 13, 1932, was "income," strictissimi juris, and taxable against the life beneficiaries. On the other hand, after December 13, 1932, the debt was extinguished and no interest could thereafter arise as against the debtor; for that reason the Court of Appeals could say in Re Otis, supra, 276 N.Y. 101, 112, 11 N.E.2d 556, 115 A.L.R. 875, that the accrual of interest was a "fiction." It is on this account, the

taxpayers argue, that, since there can be no interest, there can be no "income," save as it comes out of the land itself: e.g., in rents or produce. Behind this reasoning lies the unconscious premise that to be "income" there must be some increase from the property which is its source: like the increase of flocks, or fields, or forest. That notion is indeed of great antiquity, and for many centuries condemned the taking of all interest. Yet upon every loan the principal passes to debtor and the interest falls due, regardless of what the money may produce in his hands. It is "income" to the lender, regardless of whether the payment was "income" to the borrower; it is enough if it be payable periodically and does not discharge the principal. Figuratively one may think of it as produce of the principal; but actually it is nothing of the kind. If there is a debtor, he may pay it out of capital; or it may be paid out of the proceeds of a sale of the mortgaged land on foreclosure. It is equally "income," though there has never been any debtor. The owner of land may charge it with a debt, and the land itself may produce no "income" to its owner; yet, if the lienor sells it to satisfy the charge, he will receive "income" so far as he pays any accrued interest out of the proceeds. The effect of the New York decisions is precisely that; they have made the life tenants during the period of the "salvage operation," not life tenants at all, but lienors upon the land in company with the remaindermen: they, to the extent of the interest computed at the old rate; the remaindermen, to the extent of the principal.

While there may be a modicum of doubt whether the decision of the First Circuit in Plunkett v. Commissioner, 118 F.2d 644, is a precedent, we think that it is, in spite of the taxpayers' attempted distinctions. The restitution which the state court ordered the trustee to make, was the original value of the shares of stock for which the Berkshire shares had been wrongfully exchanged. The settlement was for less, so that the sum eventually divided between the life owners and the remaindermen did not even cover the principal. It is true that the probate court allocated a part of that sum to the life owners as income; but that was as much fictitious income from the point of view of any produce of the shares, as was the income in the New York cases; for there had been no income from the Berkshire shares while the trustee held

them, or at any rate that was not the measure of the life owners' allotment. So far as we can see, the First Circuit dealt with the situation as the Tax Court did in the cases at bar; dividing the principal of a fund among the two groups, as though there had been an increase upon it, when in fact there had been none.ᐧ However, we need not, and do not, base our own decision upon the authority of that decision; without it we should be equally satisfied of the correctness of the Tax Court's order.

Order affirmed.