JAMES BRENNEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 39129. Promulgated May 28, 1953.

*DeWitt Williams, Esq.,* for the petitioner.
*Douglas L. Barnes, Esq.,* and *John D. Picco, Esq.,* for the respondent.

OPINION.

Tietjens, *Judge:* The respondent determined a deficiency in income tax for the year 1945 in the amount of $8,878.57. This determination was made after the 3-year statute of limitations for assessment, prescribed by section 275 (a) of the Internal Revenue Code, had run. The respondent relies on section 3801 of the Code as his authority for determining the deficiency.

All of the facts have been stipulated and are so found. Those material to the controversy are set forth in our findings of fact.

1. The petitioner is an individual and a resident of the State of Washington. The returns for the calendar years 1944 and 1945 were filed by the petitioner with the collector of internal revenue for the district of Washington.

2. In filing his income tax return for the year 1944 the petitioner claimed a deduction for amortization of bond premium in the aggregate amount of $37,439.25. Of said amount, $35,514.25 represented the amortization of "bond premium" paid for the acquisition on November 24, 1944, and November 25, 1944, of debentures of the American Telephone & Telegraph Co. and Commonwealth Edison Company in the respective amounts of $32,718.75 and $2,795.50.

3. The American Telephone & Telegraph Co. convertible debentures referred to above were purchased on November 24, 1944, at a total cost of $214,718.75, exclusive of purchase interest. Said debentures had a par value of $175,000, callable at $104 on 30-day notice. The total call price was therefore $182,000, and the petitioner charged off the excess cost in the amount of $32,718.75 paid for the acquisition of said debentures as "bond premium." Accordingly, $32,718.75 was claimed as a deduction on petitioner's 1944 return in accordance with his interpretation of the provisions of section 125 of the Internal Revenue Code.

4. On November 25, 1944, the petitioner also purchased $20,000 par value of 3½ per cent convertible debentures of Commonwealth Edison Company, as referred to in paragraph 2, at a total cost of $23,245.50 exclusive of interest. Said debentures were callable at $102.25 on

30-day notice. The total call price of these debentures was $20,450, and the petitioner charged off as "bond premium" the amount of $2,795.50 which was claimed as a deduction on his tax return for 1944, also in accordance with his interpretation of the provisions of section 125 of the Code.

5. Between June 5, 1945, and June 11, 1945, the petitioner sold all of the American Telephone & Telegraph Company and the Commonwealth Edison debentures referred to above. In reporting the gain on his 1945 return, the petitioner used a cost for tax purposes for each block of debentures which was reduced by the amount of "amortizable bond premium" claimed by him as a deduction on his 1944 return. The petitioner received a total of $250,343.10 for the American Telephone & Telegraph Company and Commonwealth Edison debentures, and reported a long-term capital gain from the sale thereof in the amount of $47,883.10 on his return for the year 1945.

6. The petitioner's return for the year 1945 was filed with the respondent on January 15, 1946, and was immediately examined in connection with the return filed for the year 1944. As a result thereof a report of examination was prepared under date of January 25, 1946, in which the revenue agent found that there was a deficiency in the 1944 income tax in the amount of $26,034.92, primarily by reason of disallowance of the bond premium expense deduction shown on petitioner's 1944 return. He also determined an overassessment in income tax for the year 1945 in the amount of $9,431.74, primarily attributable to the increase in the basis of the American Telephone & Telegraph debentures and the Commonwealth Edison debentures and the corresponding reduction in gross capital gains by said amount of $47,883.10. A report of the examination of both the 1944 and 1945 returns was transmitted to the petitioner on June 13, 1946.

7. The petitioner protested the determination of the agent's office with respect to the disallowance of the deduction for bond premium amortization as claimed on the 1944 return. However, he did not agree with the agent's findings and thereafter a statutory notice of deficiency was issued to him regarding the 1944 liability in which the following determination was made:

Deduction of $32,718.75 and $2,795.50 claimed in your income tax return for the calendar year 1944 as bond premium expense attributable respectively to the American Telephone and Telegraph Company debentures, $175,000.00 par value, and Commonwealth Edison Company debentures, $20,000.00 par value acquired in that year, have been disallowed for the reason that the stated deductions did not represent true bond premiums within the meaning of the applicable provisions of the statute.

The facts show that the debentures in question were convertible at the option of the holder into capital stock of the issuing companies, and furthermore that substantially all of the excess of the purchase price thereof over

the call prices represented consideration paid for the conversion options as distinguished from premiums paid for the investment value of the debentures free of conversion options.

The petitioner filed his petition from said statutory notice of deficiency with The Tax Court of the United States on May 21, 1947, Docket No. 14104.

8. The petitioner did not file a claim for refund or execute any agreement with respect to acceptance of the overassessment determined by the examining agent for the year 1945 in the amount of $9,431.75. However, the Commissioner authorized refund of said amount as shown in the report of the examination dated June 13, 1946. The check in the amount of $9,431.74 was paid to the petitioner by the respondent on July 15, 1947, as a result of said action. The check representing said sum was cashed and the amount thereof has been retained by the petitioner and has not been refunded to the Government subsequent to July 15, 1947.

9. The petitioner at no time signed or filed Treasury Department Form 872 or other agreement waiving and extending the statute of limitations with respect to the assessment of income tax for the year 1945.

10. Prior to the trial of the proceeding in Docket No. 14104 the parties filed a joint motion for continuance of the hearing and a request to place the proceeding on a reserve calendar of the Tax Court. Said motion was filed with the Court in April 1948. The grounds for said motion as expressed therein, are, in part, as follows:

3. This same question of law has recently been presented to this Court for determination in the appeal of Christian W. Korell, Docket No. 13942, which was heard before a division of this Court at New York, N. Y., on December 8, 1947, and in the appeals of Joe and Rose Schoong, Docket Nos. 15475 and 15476, which were heard before a division of this Court at San Francisco, California, on March 22, 1948.

4. It is believed that the ultimate decisions in the causes mentioned in paragraph 3 above, will be determinative of the issue in the present proceeding and that the time of this Court and of the parties hereto may be conserved by deferring the hearing in this matter until the decisions in the foregoing appeals become final.

11. The case of *Korell* v. *Commissioner*, referred to above, was ultimately appealed to the Supreme Court and decision on the same issue in dispute in Docket No. 14104 entered therein, 339 U. S. 1019. Said decisions of the Supreme Court decided the issue regarding the amortization of bond premium in accordance with the petitioner's contentions in Docket No. 14104, and also in accordance with his contentions regarding an identical issue then pending before the Tax Court in Docket No. 25061, involving the petitioner's liability as transferee of a corporation, Piston Service, Inc.

12. Following the decision of the Supreme Court, the respondent's determination in Docket No. 14104 was conceded by the Government to the extent it involved the bond premium issue. Accordingly, a stipulation of the parties was filed with the Tax Court reflecting a deficiency in the amount of $807.80, and decision was entered therein January 16, 1951. The difference between the deficiency as determined and the reduced deficiency found by the Court was attributable entirely to the allowance by the respondent of the deduction in the year 1944 of the amortized "bond premium" claimed as an expense on his return and also eliminated by him on his 1945 return from the basis of said debenture bonds at the time of sale.

13. The liability of the petitioner for 1945 was reexamined thereafter by the respondent and a revised report prepared under date of August 22, 1951, recommending a deficiency of $8,857.51 for said year. A copy of said examination was transmitted to the petitioner under date of October 12, 1951. The petitioner did not protest said determination and the liability shown therein was the subject of the deficiency letter dated December 11, 1951, from which the petitioner appealed in the present proceeding.

14. The decision of the Tax Court in Docket No. 14104 became final prior to the issuance of the deficiency letter in the present proceeding. The file of the Tax Court for Docket No. 14104 including all pleadings filed by the parties and the decision of the Court is evidence in this proceeding.

The fact situation before us is not complicated. In bare outline it is as follows:

The petitioner purchased bonds in 1944 and sold them in 1945. He claimed a deduction on his 1944 return of $35,514.25 representing amortizable bond premium allowed as a deduction by section 125, adjusted his basis in a like amount, and reported on his 1945 return a corresponding increase in gain from the sale in that year. The respondent reversed these steps, determined a deficiency for 1944, and granted a refund for 1945. The petitioner accepted the refund which was premised on the increased basis of the bonds in 1945. The petitioner also successfully contested the 1944 deficiency in a proceeding in this Court. The respondent has determined a deficiency for 1945.

Concededly, unless section 3801 permits the adjustment now sought by the respondent, the statute of limitations has run for 1945. In approaching problems like this we have held that "the party who invokes an exception to the basic statutory limitation period must * * * assume the burden of proving all of the prerequisites to its application." *D. A. MacDonald*, 17 T. C. 934, 940. The burden is thus on the respondent.

The shape of the argument permits us to attack the problem much the same as was done in the *MacDonald* case. Both parties argue the question whether the action of the petitioner in accepting and retaining the refund in 1945 amounted to the maintenance of an inconsistent position, one of the prerequisites to the application of section 3801. For reasons hereafter stated, however, we need not decide the question of inconsistency.

Section 3801 does not purport to permit the correction of all errors and inequities. It sets forth in detail the conditions which must be met before the ordinary bar of limitations is lifted and adjustment is permitted. Some of those conditions have been met here, but we do not think all of them have. Section 3801 (b) sets out five situations in the circumstances of which adjustments are permitted. The respondent relies on (b) (2) and (b) (5) quoted in the margin.[1]

We do not think the facts bring this case within (b) (2). Our determination in Docket No. 14104 allowed a deduction to the taxpayer in 1944 but we do not see that the deduction allowed was one "which was erroneously allowed to the taxpayer for another taxable year" as required by the statute. The taxpayer only claimed the deduction in a single year, 1944, and that was the year in which our determination allowed it. True, the amount of the deduction was a factor in adjusting the basis of the bonds for the purpose of determining the taxable gain on their sale in 1945, but that is a different matter from claiming "a deduction" in 1945.

Neither do we think (b) (5) is applicable. The prerequisite for calling that subsection into play is a determination (our decision in Docket No. 14104) which "determines the basis of property * * * for gain or loss on a sale * * *." But our decision in Docket No. 14104 did not determine the basis of the bonds for any purpose whatsoever. Cf. *American Foundation Co.*, 2 T. C. 502. What was determined there was the propriety of a deduction. As said above, the allowance

---

[1] SEC. 3801.* MITIGATION OF EFFECT OF LIMITATION AND OTHER PROVISIONS IN INCOME TAX CASES.

(b) CIRCUMSTANCES OF ADJUSTMENT.—When a determination under the income tax laws—

(2) Allows a deduction or credit which was erroneously allowed to the taxpayer for another taxable year or to a related taxpayer; or

\*          \*          \*          \*          \*          \*          \*

(5) Determines the basis of property for depletion, exhaustion, wear and tear, or obsolescence, or for gain or loss on a sale or exchange, and in respect of any transaction upon which such basis depends there was an erroneous inclusion in or omission from the gross income of, or an erroneous recognition or nonrecognition of gain or loss to, the taxpayer or any person who acquired title to such property in such transaction and from whom mediately or immediately the taxpayer derived title subsequent to such transaction— * * *

\*For a detailed discussion of Section 3801 see John M. Maguire, Stanley S. Surrey, and Roger John Traynor, "Section 820 of the Revenue Act of 1938," 48 Yale L. J. 719, and H. Brian Holland, "Tax Consequences of Inconsistent Positions—A Review of Section 3801," New York University Tenth Annual Institute on Federal Taxation, p. 807.

of the deduction did affect the basis of the bonds; nevertheless, we do not think the statutory language covers the inconsistent treatment of deductions affecting the basis of property.

For the reasons stated, section 3801 is not available to the respondent and his action in respect of 1945 is barred by the provisions of section 275 (a).

Reviewed by the Court.

*Decision will be entered for the petitioner.*

---

TURNER, *J.*, dissenting: The facts, in my opinion, bring the instant case squarely within the provisions of section 3801· of the Internal Revenue Code. In subsection (b) thereof, it is provided that when a determination under the income tax laws determines the basis of property for gain or loss on a sale or exchange, and in respect of any transaction upon which such basis depends there was an erroneous omission from the gross income of the taxpayer and, on the date the determination becomes final, correction of the effect of the error is prevented by operation of internal revenue laws other than section 3801 and section 3761, the effect of the error shall be corrected by an adjustment made under section 3801, if there is adopted in the determination a position maintained by the taxpayer with respect to whom the determination is made, which position is inconsistent with the erroneous omission. Under section 3801 (c), it is provided that the adjustment authorized under subsection (b) shall be made in the same manner as if there were a deficiency with respect to the taxpayer, and as if on the date of the determination specified in subsection (b) one year remained before the expiration of the period of limitation upon assessment for such taxable year.

In keeping with the position maintained by the taxpayer, this Court, in the proceeding docketed at 14104, and pursuant to the pronouncements of the Supreme Court in *Commissioner* v. *Korell*, 339 U. S. 619, entered its decision for 1944, based on the allowance under section 125 of the Internal Revenue Code of the claimed deductions for amortization of the bond premiums paid on the purchase of the American Telephone & Telegraph Company and the Commonwealth Edison Company debentures. On the basis of this decision, it was thus apparent that the respondent, in making the refund for 1945, erroneously and contrary to the position which had been taken by the taxpayer, but in harmony with his own determination that the bond discount was not deductible for 1944, had omitted from 1945 income a part of the taxable gain realized by petitioner in that year on the sale of the said debentures. Following the Supreme Court, this Court in its decision

for 1944 in the proceeding at Docket No. 14104, adopted the position which had been maintained by the taxpayer, which position was inconsistent with the position which had been taken by the respondent, which position of the respondent resulted in his erroneous omission from 1945 income of a part of the taxable gain realized by petitioner in that year on the sale of the debentures, all of which, in my opinion, brings the instant case within the provisions of section 3801 (b) (5) of the Code.

It is said in the Court's opinion herein, however, that, even so, the 1944 determination was a determination of a deduction from gross income, not a determination of petitioner's basis for the debentures for gain or loss on the sale or exchange thereof and, accordingly, section 3801 (b) (5) is not applicable, since that section applies only if the determination was a determination of basis for the said debentures and that a determination that bond amortization is an allowable deduction in computing net income is not comprehended.

The conclusion, in my opinion, not only ignores the general scheme of the statute, but is contrary to specific provisions thereof. The general definition of basis of property for gain or loss purposes is cost. Section 113 (a), Internal Revenue Code. So far as appears, there can be no question that the bond premium was *de facto* a part of petitioner's cost of the debentures herein, and in the absence of some statutory adjusting requirement, would be a part of the taxpayer's basis therefor, under section 113 (a). In providing for the deductions prescribed in section 125, however, Congress was not unaware of the logical impact of the deduction allowed on a taxpayer's basis, for gain or loss purposes, for the bonds. It accordingly made specific provision in section 113 (b) (1) (H), to the effect that the basis of debentures, in the circumstances here, shall be the basis determined under subsection (a), adjusted "to the extent of the deductions allowable pursuant to section 125 (a) (1) with respect thereto." The deductions determined and allowed by the decision in the proceeding at Docket No. 14104 were obviously deductions allowable pursuant to section 125 (a) (1). It accordingly follows that the decision of this Court in that proceeding, to the effect that petitioner was entitled to the deduction under section 125, was by statutory fiat a determination of the taxpayer's basis for the said debentures, for gain or loss, on the subsequent sale or exchange thereof.

It is accordingly my view that the contrary conclusions expressed by this Court in its opinion herein are erroneous.

MURDOCK, *J.*, agrees with this dissent.