Charles S. **DOVEY**, Sr., **Plaintiff**,

v.

**UNITED STATES of America Defendant.**

Francis S. **DOVEY, Plaintiff,**

v.

**UNITED STATES of America Defendant.**

Civ. A. Nos. 18813, 18814.

United States District Court
E. D. Pennsylvania.
June 13, 1957.

Thomas J. Gaffney, Philadelphia, Pa., for plaintiff.

Harold K. Wood, U. S. Atty., Philadelphia, Pa., for defendant.

GRIM, District Judge.

Two life income beneficiaries of a trust created by the will of Cecelia S. Brill, who died in 1937, have brought these actions to recover certain income taxes assessed against them for the year 1947 and paid.

When the trust was created in 1937 it owned 1,690 shares of $100 par value cumulative preferred stock of The Brill Corporation, appraised at that time at $38 a share, a total of $64,220. In 1944, following a merger of The Brill Corporation with American Car and Foundry Motors Company, the trustees exchanged their Brill stock for debentures and common stock of the merged corporation (known as ACF-Brill Motors Company) and cash, as follows: $20,702.50 in cash, $118,300 in par value of new ACF-Brill Motors Company 6% income debentures, 13,520 shares of new ACF-Brill Motors Company common stock.

In 1946 the trustees sold the ACF-Brill common stock for $243,360. They, therefore, still holding the debentures (which had a market value almost equal to their par value), then had a trust asset which had increased its original value of approximately $64,000 some five or six fold, although, at least prior to 1944, apparently no income had been paid on it to the beneficiaries.[1] Because no dividends had been paid on the Brill preferred stock for so many years and in view of the exchange of securities and the large increase in the value of the securities in the trust estate, some of the life beneficiaries contended to the trustees that, under the Pennsylvania law of apportionment between life tenants and remaindermen, they were entitled to a distribution of some of the assets of the trust as income from the trust.

In order to have the claims of the beneficiaries legally determined, the trustees filed an account in the Orphans' Court of Philadelphia County, Pennsylvania. The contending parties then agreed upon a compromise and settlement of their claims. On May 8, 1947, the Orphans' Court filed an adjudication in accordance with the settlement agreement and

---

1. The facts in reference to the payment of income by the trust estate to the beneficiaries are not clear. The stipulation of facts, however, makes it clear that from 1932 to the time of the merger in 1944 no dividends were paid on the Brill preferred stock and that at the time of the merger in 1944 the accumulated unpaid dividends on the Brill preferred stock amounted to $82.25 per share.

awarded to the life beneficiaries almost all of the 6% income debentures of ACF-Brill Motors Company obtained by the trustees as a result of the corporate merger and exchange of securities. The adjudication directed distribution to the life beneficiaries of debentures having a market value as of May 8, 1947, of $101,-400. In 1947, following the adjudication, debentures of this value were transferred by the trustees to the life beneficiaries.

The Treasury Department made a determination, to which it still adheres, that when the trustees in 1944 exchanged their Brill preferred stock for cash, debentures, and common stock of the merged corporation the exchange was income tax free to the trustees except for the $20,702.50 in cash.[2]

The government contended and now contends that although the transfer to the trustees of the ACF-Brill debentures as part of the exchange was tax free, the transfer of the $101,400 worth of these debentures to the beneficiaries was not, and that the debentures were taxable to the beneficiaries as ordinary income. The life beneficiaries, following the government's contention, paid a tax on the transfer of the debentures to them as ordinary income as part of their 1947 income tax. The present suits have been brought by two of the life beneficiaries to recover the income tax so paid.

Plaintiffs contended in their claims to the trustees and in the litigation in the Orphans' Court that under the Pennsylvania law of apportionment some of the debentures should be transferred to them as income. They have not changed their position in reference to this, but they contend here that although the distribution to them of the debentures consti-

tuted income under the law of Pennsylvania, the distribution to them was not income to them under the federal income tax law. They contend that the debentures in their hands should be accorded the same tax free treatment as the debentures were accorded when received by the trustees.

The applicable sections of the Internal Revenue Code of 1939 are as follows:

"§ 161. Imposition of tax. (a) Application of tax. The taxes imposed by this chapter * * * upon individuals shall apply to the income of estates or of any kind of property held in trust * * *."

"§ 162. Net income. The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\* \* \* \* \* \*

"(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the legatees, heirs, or beneficiaries whether distributed to them or not." 26 U.S.C.A. §§ 161(a), 162(b).

Amplifying this, the Supreme Court said in Freuler v. Helvering, 1934, 291 U.S. 35, 41, 54 S.Ct. 308, 310, 78 L.Ed. 634: "Plainly the section [3] contemplates the taxation of the entire net income of the trust. Plainly, also, the fiduciary, in computing net income, is authorized to make whatever appropriate deductions

---

2. While the facts are not entirely clear, this exchange apparently was found to be tax free for the reason that no capital gain was recognized (except as to the cash) pursuant to Section 112(b) (3) of the Internal Revenue Code of 1939. 26 U.S.C.A. (I.R.C.1939) § 112(b) (3):

"(3) Stock for stock on reorganization. No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursu-

ance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization."

Subsection (c) of this section makes the quoted provision applicable where the property received in exchange includes money, and provides that gain shall be recognized with respect to the money.

3. An earlier but similar provision.

other taxpayers are allowed by law. \* \* This [net income] the fiduciary may be required to accumulate, or, on the other hand, he may be under a duty currently to distribute it. If the latter, then the scheme of the act is to treat the amount so distributable, not as the trust's income, but as the beneficiary's. \* \* \* The tax on the entire net income of the trust is to be paid by the fiduciary or the beneficiaries or partly by each \* \*."

Reduced to its simplest terms, the question in this case is whether the tax free nature of the exchange of the securities shielded the beneficiaries from tax when some of the new securities were distributed to them in kind as "income" under the apportionment theory of the Pennsylvania law of trusts.

While there are apparently no cases on all fours with this one, the governing principles are found in Plunkett v. Commissioner of Internal Revenue, 1 Cir., 1941, 118 F.2d 644, Johnston v. Helvering, 2 Cir., 1944, 141 F.2d 208, and McCullough v. Commissioner of Internal Revenue, 2 Cir., 1946, 153 F.2d 345.

In the Plunkett case a trustee, having made an improper investment, was required to substitute $500,000 cash for it. The state court later determined, under the applicable state law of apportionment, that $70,000 of the cash should be distributed to the life beneficiary as income. The First Circuit held that this $70,000 distribution was income, that the state court's determination that it was income was conclusive, and that since all the beneficiary was entitled to was income, what he received *was* income, for income tax purposes as well as for the purpose of the Massachusetts law of trusts. The fact that the $70,000 was tax free to the trust did not shield the beneficiary from taxation.

In the Johnston case the trustee apportioned to income part of the proceeds of sale of land obtained on the foreclosure of a mortgage. Judge Learned Hand's opinion held that the amount apportioned was taxable income to the income beneficiaries although it would not have been taxable in the hands of the trustee.

In the McCullough case the court held that the fact that a stock dividend was not income to a fiduciary did not preclude the dividend's being taxable income to the income beneficiary.

■■ In the light of the three decisions I can conclude only that the plaintiff's receipt of these distributions of ACF-Brill debentures as income constituted the receipt by them of income taxable as ordinary income, and that the fact that the debentures were tax free in the hands of the trustee does not shield the beneficiaries from taxation. It seems to me that the rule is that while state law creates the benefits to be received from a trust and determines how much those benefits shall be, it is the federal law which determines whether those benefits are taxable and that if state law creates, in income beneficiaries of a trust, money or property benefits, federal income tax law will tax the benefits unless something specific in the federal law makes the benefits untaxable.

The substance of plaintiff's argument in this court has been that the tax free nature of the income to the trustees passed to the income beneficiaries as the result of the operation of what they call the "conduit theory." This theory apparently is that the tax free characteristics of income pass to the beneficiaries because the trust is a mere "conduit" for the transmission of income from the trust investments to the beneficiaries.[4]

■ The contention in reference to the conduit theory, as applied to the present case, would seem to be this: When a trust has income which is currently distributable, this income is taxable to the beneficiaries [5] but not to the

---

4. It should be remembered that in the present case the transfer of the debentures to the beneficiaries was not a mere bookkeeping transaction. The trust estate held the debentures for about three years before it transferred them to the beneficiaries.

5. Except where the income received by the trust is interest on tax exempt govern-

trust, since the trust is allowed a deduction for the income which is currently distributable to the beneficiaries. Therefore, in a situation, as there is in the present case, where the receipt of property by a trust is not taxable because it was received in a tax free exchange, and the trust can make no use of a deduction for its distribution of this property to the beneficiaries, the beneficiaries should be permitted to take the property free of income tax. There is much force to this contention. As a matter of justice, perhaps, beneficiaries of a trust should not be required to pay tax when the trust distributes to them money or property which was tax free to the trust. Congress appears to have recognized the justness of this contention by providing in the Internal Revenue Code of 1954, 26 U.S.C.A. § 652, that income currently distributable to a trust beneficiary " * * shall have the same character in the hands of the beneficiary as in the hands of the trust."

The detailed discussions of the 1954 bill in the House and Senate Reports, U.S.Code Cong. & Adm.News 1954, Vol. 3, p. 4337, 4987, indicate that one of the purposes of this new section was to shield trust income beneficiaries from taxation on the distribution to them of money or property which is tax free in the hands of the trust, saying:

> "Also, the limitation insures that the beneficiary will not be taxed on certain distributions to him that represent income under the local law applicable to trusts but that are not regarded as income to the trust for federal income-tax purposes. Under existing law, a beneficiary has been held taxable on his distributable

share of proceeds received by a trust from a defaulted mortgage even though the total proceeds were less than the principal of the mortgage debt and the trust thus realized no gross income (Johnston v. Helvering, 141 F.2d 208, 2d Cir.1944, cert. den., 323 U.S. 715, 65 S.Ct. 41(1945)). Similarly, the receipt by a beneciary of a stock dividend that was nontaxable in the hands of the trust was determined to be a taxable distribution in McCullough v. Commissioner ((153 F.2d 345) 2d Cir. (1946)). The limitation of this section should preclude similar constructions and preserve the conduit principle in this area."

Significantly, this provision of the 1954 Code appears to be the first clear statutory acceptance of the conduit theory for trust income generally.

■ Prior to 1954, however, except for tax exempt bonds,[6] there appears to have been nothing in the law which applied the conduit theory to a distribution of money or property by a trust to income beneficiaries.[7] So far as I can discover, there was nothing in the law to prevent in this case the application of the definition of gross income in the Revenue Code, 26 U.S.C.A. (I.R.C.1939) § 22(a), which is, " 'Gross income' includes * * income derived from any source whatever." It should be remembered that the allowance of deductions "depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed." Montana Power Co. v. U. S., 3 Cir., 1956, 232 F.2d 541, 544, New Colonial Ice Co. v. Helvering, 1934, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348.

ment bonds. In this case the Revenue Code has expressly exempted this type of income from being taxed as it passes to the beneficiaries. Section 163(b) of the 1939 Code, 26 U.S.C.A. (I.R.C.1939) § 163(b): "(b) Credits of beneficiary. If any part of the income of an estate or trust is included in computing the net income of any * * * beneficiary, such * * * beneficiary shall, for the purpose of the normal tax, be allowed as

credits against net income * * * his proportionate share of such amounts of interest [on obligations of the United States and its instrumentalities] * * * as are, under this Supplement, required to be included in computing his net income * * *."

6. Footnote 5, supra.

7. *Expressio unius est exclusio alterius.*

The strongest argument in favor of the plaintiffs in the present case is that the Treasury Department itself has made rulings which were contrary to the theory for which it here contends. Revenue Ruling 24, Cum.Bull.1953–1, p. 262, is summarized in the headnote thus:

"The distribution of principal cash to an income life beneficiary of a trust in lieu of a nontaxable stock dividend which was not permitted to be distributed under State law, does not result in taxable income to the life beneficiary except to the extent that income was realized by the trust upon conversion of the dividend stock to cash and was properly distributed with the principal."

The basis for this 1953 Revenue Ruling appears in the statement therein that "The Bureau has for many years followed its position * * * that income of a trust retains in the hands of the beneficiary the same character which it possessed in the hands of the trustee." Revenue Ruling 24 cites as a precedent I.T. 1622, Cum.Bull. II–1 (1923) which states in part:

"Since, under the doctrine laid down in Eisner v. Macomber, [1920, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521] supra, a stock dividend is not income in the hands of the trustee, it can not be considered income when distributed by the trustee to the beneficiaries."

This quotation shows the error in the reasoning of the Treasury Department. In the Eisner case the Supreme Court held that stock dividends are not taxable for income tax purposes, saying, 252 U.S. at page 202, 40 S.Ct. at page 191, quoting from Towne v. Eisner, 1918, 245 U.S. 418, 38 S.Ct. 158, 62 L.Ed. 372:

"A stock dividend really takes nothing from the property of the corporation, and adds nothing to the interests of the shareholders. Its property is not diminished, and their interests are not increased. * * * The proportional interest of each shareholder remains the same. The only change is in the evidence which represents that interest, the new shares and the original shares together representing the same proportional interest that the original shares represented before the issue of the new ones."

The doctrine of Eisner v. Macomber, 1920, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, has no application to a distribution from a trust estate to beneficiaries and it should not have been applied to trust situations. It is true, as the Supreme Court pointed out, that a stock dividend takes nothing from the property of a corporation and adds nothing to the interests of the shareholders, but it is not true, and this shows the error in the reasoning of the Treasury Department, that a distribution from a testamentary trust to its beneficiaries takes nothing from the trust estate and adds nothing to the interests of the beneficiaries. A distribution from a testamentary trust to life beneficiaries necessarily takes something from the trust and the remaindermen. It gives something to the life beneficiaries at the expense of the remaindermen.

It is entirely clear that the law is as it has been enunciated by the First and Second Circuits. The law so enunciated will be followed and the administrative pronouncements of the Treasury Department antedating the 1954 Code will be disregarded.

Judgment will be entered in favor of the defendant in each case.