ESTATE OF MARY B. WARBURTON, CHARLES EGERTON WARBURTON AND JANE ALFRED WARBURTON, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THOMAS B. WANAMAKER, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 63499, 63500.    Filed April 15, 1958.

*Raymond C. Cushwa, Esq.*, and *George D. Webster, Esq.*, for the petitioners in Docket Nos. 63499 and 63500.

*Gustave F. Straub, Esq.*, for the petitioner in Docket No. 63499.

*William Schwerdtfeger, Esq.*, for the respondent.

### OPINION.

MULRONEY, *Judge:* Respondent determined deficiencies for the year 1947 in the Federal income tax of the Estate of Mary B. Warburton in the amount of $110,744.77 and in the Federal income tax of Thomas B. Wanamaker, Jr., in the amount of $42,268.12. The issues are (1) whether certain distributions by a trust on March 11, 1948, constituted ordinary income to the beneficiary-recipients; and (2) whether sections 1311–1315 of the 1954 Internal Revenue Code are applicable to the facts of this controversy.

It is stipulated that the records in Docket Nos. 44289 and 44290, the prior cases before this Court involving the same parties, are incorporated by reference in the present consolidated cases. In the prior cases, the issues were (1) whether the distributions by the trust constituted taxable income to the beneficiaries and (2) whether such distributions were taxable to the beneficiaries in the year 1948. This Court, in a Memorandum Opinion, held that the beneficiaries acquired a present right to receive the trust distributions in 1947 and that consequently such distributions were not taxable to them in 1948. All of the facts have been stipulated, and are found accordingly.

Thomas B. Wanamaker, Jr., a resident of Philadelphia, Pennsylvania, filed his Federal income tax return for 1947 with the then collector of internal revenue for the first district of Pennsylvania. The 1947 return of Mary B. Warburton, who died November 17, 1954, was filed with the then collector of internal revenue for the first district of Pennsylvania.

Thomas B. Wanamaker, Jr., and Rodman and Mary B. Warburton were life beneficiaries of a trust created under the will of Thomas B. Wanamaker, Sr., who died on March 2, 1908. The income of the trust was to be distributed to the beneficiaries semiannually. The remain-

dermen were the testator's grandchildren or their descendants, if living at the death of the life beneficiaries. Under the trust provisions and as a result of the death of other beneficiaries, the interests of Thomas, Jr., and Rodman and Mary B. Warburton during the years 1947 and 1948 were one-fourth, one-fourth, and one-half, respectively. One of the assets of the trust was a parcel of improved real estate in Philadelphia. On January 30, 1926, the trustee sold the property for the sum of $1,775,000, receiving cash in the amount of $275,000 and $1,500,000 in class A 5½ per cent coupon bonds of the purchaser maturing January 30, 1931. Both the principal and interest of the bonds were secured by a first mortgage on the property sold. All interest on the bonds, up to and including the maturity date, was paid to the trust when due and distributed to the income beneficiaries in accordance with the terms of the will. The principal of the bonds was not paid on the maturity date, and thereafter both the principal and subsequently accruing interest remained in default. On November 3, 1941, the trustee under the mortgage foreclosed the mortgage and took title to the property covered thereby for the benefit of the bondholders. On October 28, 1947, the trustee of the Wanamaker trust sold its $1,500,000 face amount of bonds,[1] together with all rights inherent therein, to a corporation known as One Twenty-One South Broad Corporation for $660,000 cash, thereby sustaining a capital loss.

The trustee held the $660,000 received from the sale of the bonds pending a determination by the Orphans' Court of Philadelphia County as to whether the proceeds should be apportioned between income and principal accounts in accordance with section 10 of the Pennsylvania Principal and Income Act and, if so, what amount should be allocated to the income account. In January 1948, the trustee filed with the Orphans' Court an account entitled "Third Account," together with a computation of a proposed apportionment of the proceeds, suggesting that $264,736.46 (less court accounting costs and commissions) be allocated to income. The amount to be allocated to income was computed by the trustee based upon interest at 4 per cent during the period that the bond interest was in default. This apportionment was approved by an adjudication of the Orphans' Court filed February 14, 1948, and such adjudication, no exceptions having been filed, was confirmed by that court on March 2, 1948. This action of the court was appealable for a period of 3 months from March 2, 1948, but on March 11, 1948, the trustee, in accordance with the court's adjudication, made distributions to the life beneficiaries as follows: Thomas B. Wanamaker, Jr., $64,226.18; Mary B. Warburton, $128,452.36; and Rodman Wanamaker, $64,226.17.

---

[1] It has been stipulated the cost basis of the bonds to the trust was the same as the face amount of the bonds.

Neither Mary B. Warburton nor Thomas B. Wanamaker, Jr., made any reference on their 1947 Federal income tax returns to the sale of the bonds which was made by the trust in that year. In their 1948 returns, neither Mary B. Warburton (joint return filed with her husband) nor Thomas B. Wanamaker, Jr., included any portion of the $264,736.46 in their gross income for that year. However, Thomas B. Wanamaker, Jr., attached to his return for that year a statement which read, in part, as follows:

The said amount of $262,147.66 is not included in gross income in the Fiduciary Return filed by the trustee, nor is it included in the amount of income distributable to beneficiaries, in that it is contended that since a loss resulted from the sale of these bonds, there can be no taxable income to the said estate or to any of the beneficiaries thereof from such sale, or from the distribution of any of the proceeds from such sale. Accordingly, the taxpayer's share of said amount, which is $65,536.91, is not included in gross income in this return.

A similar schedule, except for the amount concerned, was attached to the 1948 joint return of Mary B. Warburton and her husband.

Respondent issued notices of deficiency to Thomas B. Wanamaker, Jr., and to Mary B. Warburton (and her husband) on July 14, 1952, determining that the distributions in question were taxable to the parties in 1948. The parties filed petitions with this Court contesting the determinations of the respondent and the cases were assigned Docket Nos. 44289 and 44290. On March 21, 1955, this Court filed its opinion holding that under Pennsylvania law the parties had acquired in 1947 a present right to receive the distributions in controversy and could not be taxable for such distributions in any later year. The Court did not decide whether such distributions constituted income, deeming it unnecessary to do so in view of its disposition of the cases. On July 18, 1955, this Court entered its decisions in the two dockets, and on October 14, 1955, respondent filed petitions for review, which were dismissed by stipulation of the parties on January 19, 1956.

On his 1947 return, Thomas B. Wanamaker, Jr., reported gross income in the amount of $26,425.14. On her 1947 return Mary B. Warburton reported gross income of $185,385.31. Thomas B. Wanamaker, Jr., and Mary B. Warburton filed their 1947 Federal income tax returns on March 15, 1948. The notices of deficiency in Docket Nos. 44289 and 44290 were mailed to the petitioners on July 14, 1952, which was more than 3 but less than 5 years after the petitioners filed their 1947 returns. The notices of deficiency in the present cases were mailed to the petitioners on May 22, 1956, which was within 1 year after the decisions in Docket Nos. 44289 and 44290 became final.

The first issue is whether the amounts distributed to the petitioners by the trust constitute taxable income. We think that the cases of

*Johnston* v. *Helvering*, 141 F. 2d 208, affirming 1 T. C. 228, certiorari denied 323 U. S. 715; *Plunkett* v. *Commissioner*, 118 F. 2d 644, affirming 41 B. T. A. 700; and *Dovey* v. *United States*, 152 F. Supp. 810 (E. D., Pa.), are controlling. In the *Johnston* case the taxpayer-beneficiaries were entitled to the net income of a trust, which in 1924, sold real estate and took in payment a secured bond for $600,000. In 1932 the mortgagor defaulted and the trustees bid in the security for $600,000. In 1937, the year in dispute, the property was sold for $550,000, at which time there was due approximately $163,000 in defaulted interest. A New York law allotted part of such proceeds to beneficiaries of the life interest. The trustees allocated 21 per cent of the $550,000 to interest and the balance to corpus, and they distributed the 21 per cent to the taxpayer-beneficiaries. This Court held that such distributions were taxable income and the Court of Appeals for the Second Circuit affirmed.

Petitioners admit the facts in the *Johnston* case are essentially similar to those in the instant case and the New York statute there involved was substantially the same as the Pennsylvania Principal and Income Act involved here. Petitioners argue the *Johnston* case was wrongly decided and, regardless of the correctness of the *Johnston* case, the distribution is, under section 162 (d) (1), not taxable. We see no point in again stating the reasons that led us to the conclusion in the *Johnston* case. We have reexamined our opinion and the opinion of Judge Learned Hand of the Second Circuit, affirming our decision, and have decided not to depart therefrom.

Section 162 (d) (1) [2] was added to the Code in 1942. Petitioners argue that the cited section changed the principle in the *Johnston*

---

[2] SEC. 162. NET INCOME.

(d) RULES FOR APPLICATION OF SUBSECTIONS (b) AND (c).—For the purposes of subsections (b) and (c)—

(1) AMOUNTS DISTRIBUTABLE OUT OF INCOME OR CORPUS.—In cases where the amount paid, credited, or to be distributed can be paid, credited, or distributed out of other than income, the amount paid, credited, or to be distributed (except under a gift, bequest, devise, or inheritance not to be paid, credited, or distributed at intervals) during the taxable year of the estate or trust shall be considered as income of the estate or trust which is paid, credited, or to be distributed if the aggregate of such amounts so paid, credited, or to be distributed does not exceed the distributable income of the estate or trust for its taxable year. If the aggregate of such amounts so paid, credited, or to be distributed during the taxable year of the estate or trust in such cases exceeds the distributable income of the estate or trust for its taxable year, the amount so paid, credited, or to be distributed to any legatee, heir, or beneficiary shall be considered income of the estate or trust for its taxable year which is paid, credited, or to be distributed in an amount which bears the same ratio to the amount of such distributable income as the amount so paid, credited, or to be distributed to the legatee, heir, or beneficiary bears to the aggregate of such amounts so paid, credited, or to be distributed to legatees, heirs, and beneficiaries for the taxable year of the estate or trust. For the purposes of this paragraph "distributable income" means either (A) the net income of the estate or trust computed with the deductions allowed under subsections (b) and (c) in cases to which this paragraph does not apply, or (B) the income of the estate or trust minus the deductions provided in subsections (b) and (c) in cases to which this paragraph does not apply, whichever is the greater. In computing such distributable income the deductions under subsections (b) and (c) shall be determined without the application of paragraph (2).

case, and the argument on brief is: "This subsection, * * * makes it clear that the conduit principle is to be applied in determining what portion of a distribution by a trustee to a beneficiary is taxable income to the latter." By conduit principle as applied here petitioners mean: If the receipt of an amount by the trust is not taxable income to the trust, then the distribution of a portion of the amount to a beneficiary is not taxable income to the latter.

We do not find in the cited section the direction to apply the so-called conduit principle to a fact situation similar to the one before us. We have studied the section and the pertinent legislative history and we are convinced the statute is inapplicable to the problem here. Congress, in enacting these provisions, was not directing its attention to the principle of the *Johnston* case, but, instead, intended to change the result in *Burnet* v. *Whitehouse*, 283 U. S. 148. In the *Whitehouse* case, and in other cases, it had been held that amounts received under a gift, devise, bequest, or inheritance of recurrent payments to be made in any event, whether or not out of corpus, were excluded from gross income even though, in a particular year, the entire amount paid to a trust beneficiary was paid from trust income. We do not think that Congress, in changing the result of the *Whitehouse* case, sought also to change the result of the *Johnston* case. The problems were not similar. In fact, the intent of Congress to alter the result of the *Johnston* case is not manifested until the enactment of section 652 of the 1954 Code. The Senate Finance Committee, in its report on the 1954 Act, said:

Also, the limitation insures that the beneficiary will not be taxed on certain distributions to him that represent income under the local law applicable to trusts but that are not regarded as income to the trust for Federal income-tax purposes. Under certain decisions of existing law, a beneficiary has been held taxable on his distributable share of proceeds received by a trust from a defaulted mortgage even though the total proceeds were less than the principle of the mortgage debt, and the trust thus realized no gross income (*Johnston* v. *Helvering*, 141 F. 2d 208, 2d Cir. 1944, cert. den., 323 U. S. 715 (1945). [Senate Finance Committee Rept. No. 1622, p. 346.]

The next issue is whether sections 1311–1315 of the Internal Revenue Code of 1954 are applicable to the facts of these cases. The purpose of these sections is to mitigate the effect of the statute of limitations in certain carefully described situations. Respondent, who is invoking this exception to the basic statutory limitation period, has the burden of establishing its application here. *James Brennen*, 20 T. C. 495; *D. A MacDonald*, 17 T. C. 934. We believe that he has done so.

Section 1311 provides that if "a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the

error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, * * * then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314." Section 1313 (a) (1) defines a determination as "a decision by the Tax Court * * * which has become final." Section 1312 describes the circumstances in which the determination must be made in order to warrant the adjustment provided for in section 1311. Six situations are outlined in section 1312, and we think that the situation described in subsection 1312 (3) (B) fits the facts of the cases before us. This subsection is as follows:

SEC. 1312. CIRCUMSTANCES OF ADJUSTMENT.

The circumstances under which the adjustment provided in section 1311 is authorized are as follows:

\* \* \* \*. \* \* \*

(3) DOUBLE EXCLUSION OF AN ITEM OF GROSS INCOME.—

\* \* \* \* \* \* \*

(B) ITEMS NOT INCLUDED IN INCOME.—The determination requires the exclusion from gross income of an item not included in a return filed by the taxpayer and with respect to which the tax was not paid but which is includible in the gross income of the taxpayer for another taxable year or in the gross income of a related taxpayer.

Here the determination in the related cases involving the taxability of this same trust distribution in 1948 required the exclusion of such distribution in 1948 from the gross income of Mary B. Warburton and Thomas B. Wanamaker, Jr., on their Federal income tax returns for that year. It is also true that such distributions were not included on their returns for that year. Petitioners argue that the statements attached to their respective returns to the effect that such trust distributions were not regarded by them as taxable income constitute an inclusion of such items in the returns. We cannot accept this argument. The subsection talks about "an item not included in a return * * * and with respect to which the tax was not paid." Subsection 1312 (3) (A), on the other hand, describes a situation where the "determination requires the exclusion from gross income of an item *included in a return filed by the taxpayer or with respect to which tax was paid* and which was erroneously excluded or omitted from the gross income of the taxpayer for another taxable year, or from the gross income of a related taxpayer." (Emphasis added.) It appears that the concern of the sections here cited is whether an item was included or excluded from the income of a particular year. A comparison of the phrases "or with respect to which tax was paid" (subsec. (3) (A)) and "with respect to which the tax was not paid" (subsec. (3) (B)) reveals that it is the effect of the item on taxable

income which is significant in these sections. We are persuaded, therefore, that subsection 1312 (3) (B) is applicable here.

Where this particular subsection is applicable, a further requirement must be met before the adjustment described in section 1311 can be made. This requirement is contained in subsection 1311 (b) (2) (A):

SEC. 1311. CORRECTION OF ERROR.

(b) CONDITIONS NECESSARY FOR ADJUSTMENT.—

\* \* \* \* \* \* \*

(2) CORRECTION NOT BARRED AT TIME OF ERRONEOUS ACTION.—

(A) DETERMINATION DESCRIBED IN SECTION 1312 (3) (B).—In the case of a determination described in section 1312 (3) (B) (relating to certain exclusions from income), adjustment shall be made under this part only if assessment of a deficiency for the taxable year in which the item is includible or against the related taxpayer was not barred, by any law or rule of law, at the time the Secretary or his delegate first maintained, in a notice of deficiency sent pursuant to section 6212 or before the Tax Court of the United States, that the item described in section 1312 (3) (B) should be included in the gross income of the taxpayer for the taxable year to which the determination relates.

The notices of deficiency in Docket Nos. 44289 and 44290 (involving the petitioners here) were mailed to the petitioners therein on July 14, 1952. This date was more than 3 but less than 5 years after the filing by Thomas B. Wanamaker, Jr., and Mary B. Warburton of their 1947 income tax returns. Thus it is evident that the requirement of subsection 1311 (b) (2) (A) can be met only if section 275 (c) of the 1939 Code, which provides for a 5-year statute of limitation, is applicable. This 5-year period is operative where the taxpayer omits from the gross income of a taxable year "an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return." On their 1947 returns Thomas B. Wanamaker, Jr., and Mary B. Warburton reported gross income of $26,425.14 and $185,385.31, respectively. The unreported trust distributions of $64,226.18 to Thomas and $128,452.36 to Mary, which amounts were properly includible in gross income for 1947, are clearly in excess of the 25 per centum requirement. Since, therefore, the 5-year period of section 275 (c) is applicable, it is evident that the year 1947 was still open when the notice of deficiency for the year 1948 was mailed to the petitioners in Docket Nos. 44289 and 44290 on July 14, 1952.

Petitioners also make the argument that, if subsection 1312 (3) (B) is applicable here, the respondent is barred under subsection 1311 (b) (2) (A) because the statute of limitations had run as to the trustee of the trust at the time the notices of deficiency were mailed in 1952. Petitioners apparently cast the trustee in the role of "related taxpayer"

as that term is used in subsection 1311 (b) (2) (A). We do not interpret the subsection the way that petitioners argue. Subsection 1311 (b) (2) (A) is in the disjunctive, and it is sufficient if the deficiency may be assessed for the taxable year of the taxpayer who made the erroneous exclusion of income, *or* for the taxable year of a related taxpayer. Moreover, the purpose of these sections (1311–1315) is to correct inequities by mitigating the effect of the statute of limitations where either the incorrect year or the incorrect taxpayer was involved. Here we do not have the situation where an incorrect taxpayer was involved.

Even if we should accept the argument of the petitioners that, through the statement attached to their 1948 returns, the trust distributions to them can be said to have been "included" in these returns so as to make subsection 1312 (3) (A) applicable, the result we have reached above remains unchanged. Subsection 1311 (b) (1), which is a requirement that must be met before an adjustment can be made in subsection 1312 (3) (A) situations, provides as follows:

SEC. 1311. CORRECTION OF ERROR.

(b) CONDITIONS NECESSARY FOR ADJUSTMENT.—

(1) MAINTENANCE OF AN INCONSISTENT POSITION.—Except in cases described in paragraphs (3) (B) and (4) of section 1312, an adjustment shall be made under this part only if—

In other words, the requirement is that the position maintained by the taxpayer with respect to the taxable year of the determination and which is adopted in the determination is inconsistent with erroneous exclusion of the disputed item in the taxable year of the error. Petitioners here maintained just such an inconsistent position with respect to the trust distributions in the years 1947 and 1948. In Docket Nos. 44289 and 44290 they maintained that the distributions were not taxable in 1948 and the Court, in its determination, so held. This, obviously, was inconsistent with the exclusion of such distributions to them from their gross income in 1947. See *Daniel M. Cory*, 29 T. C. 903.

*Decisions will be entered for the respondent.*